28 C.C.P.A.(Patents)

## In re TOURTELLOTTE.
### Patent Appeal No. 4448.

Court of Customs and Patent Appeals.

Nov. 8, 1940.

C. A. Weed, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D.C., of counsel), for the Commissioner of Patents.

Harold T. Stowell, of Washington, D. C., amicus curiae (on hearing of petition for rehearing in No. 4008).

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States

Patent Office affirming the decision of the Primary Examiner rejecting claims 24, 25, 28, 33, 39, 47, 49, 51, and 52 in appellant's application for a patent for an alleged invention relating to new and useful improvements in building structures, particularly apartment buildings, and a method of erecting the same.

Three claims were allowed by the Primary Examiner.

Claims 24 and 47 are illustrative of the appealed claims. They read:

"24. A building erected to have the base of each side wall conform to the natural slope of the hillside supporting it, thereby avoiding changing the natural formation of the hill slope and comprising a plurality of setback rows with a main bearing wall of each row directly under and supporting the next higher row between the front and rear thereof, all of its main bearing walls materially less than the total height of the building, said building stepped depthwise and, therefore, extending transversely of the slope of the hillside with all the rooms thereof facing opposite to the hillside whereby each successive row receives its daylight from over the front projecting roof of a lower row, said building having its main entrance from the level ground at the base of the hill."

"47. That step in the method of erecting a building having the base of each side wall conforming to the natural slope of the hillside supporting it, thereby avoiding changing the natural formation of the hill slope and comprising a plurality of set back rows of apartments arranged in depthwise stepped formation corresponding to the natural slope of the hillside, the roof of a lower apartment forming a terrace for the upper apartment in front thereof, which consists in providing the several rows of apartments with main bearing walls stepped one above another by excavating the hillside to form sufficient levels only for the foundations of the main bearing walls, then erecting a series of such walls, none the full height of the building with a main bearing wall of each row directly under and supporting the next higher row between the front and rear thereof, and providing each row with a common corridor to all of the apartments of the row and also with a cross corridor and providing the cross corridors with a stair well or elevator shaft common to all the cross corridors of the building, each of said rear corridors opening at its end to the slope of the hillside,

the bearing wall of a lower row forming a dividing wall of the next succeeding row and the front wall of the next succeeding row whereby each successive row receives its daylight from over the front projecting roof of a lower row, said building having its main entrance from the level ground at the base of the hill."

The reference is: The Architectural Record, October 1932, pp. 222 and 232.

In his original statement to the Board of Appeals, dated September 28, 1936, the Primary Examiner relied upon pictures of two models appearing in the reference: One, Fig. 12, on page 222, and the other, designated "Type 'D,'" on page 232. The examiner conceded in his statement that appellant's structure differed in several respects from the disclosures in the reference, but held that those differences were mere matters of choice and architectural skill, and did not involve invention. In comparing appellant's disclosure with the pictures in the reference, the examiner stated that the appealed claims call for a structure wherein excavation of a hillside is avoided, whereas, the reference discloses excavation or the hillside; that the appealed claims require that the "bases of the side walls" conform "to the natural slope of the hillside," but that an "equivalent arrangement" was disclosed in the reference; that, although in appellant's disclosure the living rooms have outside exposure, in the reference the "front rooms of the stories looking out of the roofs of the lower row have the same exposure as in appellant's case"; and that the "main difference between" appellant's structure and the disclosures in the reference "is the slope of the hillside. In the reference, the angularity is relatively small; in appellant's instance it is large or shown on a steep hillside. The steeper the slope, the greater the degree of exposure. * * * Other differences proceed from the fact that the invention is applied to an apartment house in one instance [appellant's disclosure], and to flats and individual houses in the other [the reference], with all the necessary implications involved. These, it is maintained, are not matters of invention but proceed from the necessary skill of the architect."

In a supplemental statement to the Board of Appeals, dated November 27, 1936, the examiner applied a new ground of rejection, that of undue multiplicity of claims, there being at that time 26 claims on appeal to the Board of Appeals.

In its original decision, affirming the decision of the Primary Examiner, the Board of Appeals stated that appellant's application relates to hillside apartment buildings, whereas "The reference shows individual or two-family dwellings designed to be constructed in rows on a hillside."

We quote further from the board's decision:

"* * * in the reference there are side openings as well as openings over the roofs of the adjoining habitations. In the reference the lower chamber is produced by slightly excavating the hillside so that the ground forms a series of steps. Appellant, on the contrary, prefers to leave the natural slope of the hill and merely install footings for supporting his structure. By so doing, however, appellant wastes the triangular cross-sectional space immediately above the ground, which the reference utilizes by excavation.

"There are other detailed differences which appellant has pointed out but we do not deem it necessary to mention them.

"It is our opinion that where a suggestion has been made that dwellings should be arranged in a stepped formation on hillsides, in the manner disclosed by the reference, it is merely a question of design rather than of invention, as to whether a solid block of habitations should be provided or detached rows of houses. With the detached type, of course, additional side openings can be provided. We consider that the omitting of the slight excavation of the surface of the ground and thereby omitting the additional cellar or basement space is well within the skill of architects and is not entitled to patent protection."

From the decision of the Board of Appeals, appellant appealed to this court—Patent Appeal No. 4008.

On December 19, 1938, this court, without passing on the issue of the patentability of the appealed claims, affirmed the decision of the Board of Appeals, stating, inter alia in our decision, that: "In view of the fact that appellant's reasons of appeal do not include one of the grounds of rejection presumably applied by the Board of Appeals—undue multiplicity of claims—the decision of the board must be affirmed, regardless of any views we might hold as to the patentability of the appealed claims." Thereafter, counsel for appellant filed a petition for rehearing. The petition was granted, and the cause was reargued by counsel and Harold T. Stowell,

amicus curiae. Subsequently, and while the cause was pending in this court, the Commissioner of Patents, in a formal communication addressed to the court, requested that the case be remanded to the Patent Office for further consideration and action, the commissioner stating that, as the court at the request of counsel for appellant had theretofore dismissed a large number of the claims on appeal, it was desired that the proper tribunals of the Patent Office give further consideration to the question of undue multiplicity of claims and also to the question of the patentability of the remaining claims. Pursuant to the request of the Commissioner of Patents, the cause was remanded to the Patent Office for further consideration and action. Thereafter, in a decision, dated March 19, 1940, the Primary Examiner stated that as appellant had cancelled 17 of the 26 claims formerly appearing in his application, the claims were not unduly multiplied. The examiner, however, adhered to the views expressed in his original decision, hereinbefore referred to, that the claims here on appeal were not patentable over the reference of record, and, in reply to an affidavit of record by F. G. Frost, Jr. (who, together with W. F. R. Ballard, whose affidavit also appears of record, prepared the reference article), discussed the disclosure in Fig. 11 of the reference.

The Board of Appeals affirmed the decision of the Primary Examiner, stating, in substance in its decision, that it adhered to the views expressed in its original decision that, in view of the disclosures in the reference, the claims did not involve patentable subject matter.

It will be observed, therefore, that the issue of undue multiplicity of claims, which was the subject of our discussion in our decision in the former appeal (No. 4008), which decision did not become final because set aside by the granting of the petition for rehearing, is not before us in the instant appeal. That decision was not published in permanent volumes, but unfortunately, through no fault of the publishers, was published in the advance sheets of both the Federal Reporter (100 F.2d 249), and the U. S. Patents Quarterly (41-U.S.P.Q.-205).

As will be observed from the appealed claims, appellant's building, comprising a plurality of setback rows of apartments arranged in "depthwise stepped formation" with the roof of each lower apartment

forming a terrace for the next higher, may consist of as many as twenty stories or more, and is designed to be constructed on a hillside and to conform to the natural slope thereof. The base of each side wall in appellant's building conforms to the natural slope of the hillside and no excavation is required for the main part of the building, except for conventional foundation footings for the main bearing walls, which walls are materially less in height than the building and, therefore, do not, as in ordinary apartment buildings, bear the weight of the entire building; as a result, they and their foundation footings may be of comparatively reduced size and strength. (According to appellant's specification and drawings, the main bearing walls may be not more than three stories in height, although that precise limitation is not contained in the appealed claims.) The main bearing wall of a lower row of apartments is directly beneath and supports the next higher row between the front and rear thereof, and forms a dividing wall for such higher row and the front wall of the next succeeding higher row, whereby daylight is furnished each successive row of apartments from over the roof of a lower row, which roof "is utilized as a terrace, garden or recreation space." Each row of apartments is provided with a corridor which extends across the building and runs parallel with the hillside. Each end of such corridor opens onto a grade entrance which may be reached by a walk extending thereto from the street level. Each of those corridors is intersected by a corridor which extends to stairways and elevators. Accordingly, each apartment is accessible by inside stairways and elevators as well as by grade entrances.

The reference discloses several types of buildings. Those relied upon by the tribunals of the Patent Office are shown in the reference as "Type 'D,'" "Type 'D' Diagonal," and Figs. 11 and 12.

Each of the illustrations in the reference relied upon discloses a single row of four separate dwellings (some of the dwellings are two and some three stories in height) joined together by party walls, and built on a hillside in stepped formation. A portion of each of the top floors of the second, third, and fourth buildings is supplied with light and air from over the roofs of each succeeding lower building, and as there is but one row of buildings the sides of each building are exposed. Each build-

ing, however, is on an excavated level foundation, which, as stated in an affidavit of record by E. B. MacNaughton ("a graduate of the Massachusetts Institute of Technology in Architecture," who for more than twenty years had been engaged in the practice of architecture), would require, in addition to the excavations, "expensive retaining walls."

It would seem to be clear that, owing to the necessary excavation of the hillside and the building of retaining walls, an apartment building composed of the groups of separate buildings disclosed in the reference would be much more expensive than one constructed in conformity with appellant's disclosure. Furthermore, it would be necessary, as stated in the affidavit of MacNaughton, to provide an apartment building composed of such groups of separate buildings with "courts or terraced yards" in order to provide the lower stories of the separate buildings forming the interior of such an apartment building with outside exposures.

The affiant Ballard, who, as hereinbefore noted, together with F. G. Frost, Jr., prepared the reference article, stated in his affidavit that he is a "graduate of Princeton University and a practicing architect with offices in The Architects' Building, 101 Park Avenue, New York, New York," and that he examined the structure disclosed in appellant's application and found no similarity between it and the structures disclosed in the reference. He further stated that the reference structures were designed merely as "small unit dwellings joined together by party walls whereas, the Tourtellotte structure [appellant's] is an entirely different one architecturally," and that the reference structures "were not designed to eliminate excavation costs, etc., but merely with the intention of showing various types of dwellings and arrangement thereof suitable for group hillside development."

The affiant F. G. Frost, Jr., stated in his affidavit that he is a graduate of Princeton University and is a practicing architect with offices at 144 East 30th Street, New York City; that he participated with W. F. R. Ballard in the preparation of the reference article; that the structures illustrated in the reference article "were designed as merely unit houses joined together by party walls"; that he had read the affidavit of W. F. R. Ballard, and that the statements contained therein are true. He further

348

stated that "the top floor of each unit [in Fig. 11 of the reference] merely overlooks the roof of a separate and distinct house and the usual considerable and expensive excavations would be necessary in erecting such houses."

It is apparent from the record that if, in designing his apartment building, appellant had followed the teachings of the prior art and had exercised nothing more than the skill of an architect, he would have provided excavated levels for each row of apartments, and would also have constructed "courts or terraced yards" so as to provide the lower stories of the separate buildings forming his structure, except those forming the outer contour, with an outside exposure, and would have built retaining walls to prevent "cave-ins and slides." There are many other important differences between appellant's structure and the disclosures in the reference. However, we deem it unnecessary to discuss them.

We have given careful consideration to the views expressed by the tribunals of the Patent Office but are of opinion that appellant's structure, which is obviously new and useful, is neither disclosed nor suggested by the prior art cited, and that the appealed claims define patentable subject matter. It should be understood, of course, that, in holding that the appealed claims define patentable subject matter, our decision is confined to the precise issues presented by the reasons of appeal.

For the reasons hereinbefore stated, the decision of the Board, of Appeals is reversed.

Reversed.