## WATSON et al. v. HEIL et al.
### No. 6298.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1951.

Decided Dec. 11, 1951.

---

Donald W. Robertson, New York City (Pollard & Johnston, New York City, Lawrence Perin and Semmes, Bowen & Semmes, all of Baltimore, Md., on brief), for appellants.

Herman Seid, New York City (George E. Kieffner, Baltimore, Md., on brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought for infringement of United States Patent No. 2,479,530 issued to Orla E. Watson on August 16, 1949 on an application filed September 27, 1946. It relates to grocery carts provided with baskets for use in self service stores or super markets. Customers use the carts to collect and carry their purchases to the check-out counter where the carts are unloaded and pushed aside for use by other customers. The chief object of the invention is to save floor space for the vehicles when they are not in use, and this is accomplished by constructing the carts and the baskets mounted thereon in such a fashion that they will nest or telescope horizontally, one within another, without removing the baskets from the supporting chassis. When this is done, eighty per cent of the floor space, which the carts would otherwise occupy, is saved.

Infringement of the patent was clearly shown. The defense was directed to the contentions: (1) that the patent was invalid for lack of invention; and (2) that it had been obtained from the Patent Office through the collusive action of the patentee and one Sylvan N. Goldman, who had filed an application for a patent on a nesting cart which was placed in interference with the pending Watson application. The charge is that the parties to the interference proceeding illegally came to an agreement whereby facts indicating priority of the Goldman discovery were suppressed, Watson was granted the patent in suit, and a corporation, of which Goldman was president, secured a major interest under the patent as a licensee. The District Judge sustained the defense of invalidity for lack of invention, and having done so, found it unnecessary to consider the second defense.

The structure is described in the findings of the District Court as follows:

"5. The patented cart includes two upright frame members attached to a horizontal base support which is mounted on wheels, the upright frame members being connected at the top by a handle for pushing the cart. In addition, two metal basket supports, one above the other, are connected to the upright frame members, slanting upwardly. All such elements are conceded to be old and were used in grocery carts more than one year prior to the filing date of the patent in suit.

"6. In the patented cart, the basket supports are tapered and support a basket conforming to such taper, and the basket is provided with a hinged gate at the rear, as shown in Figure 3 of the patent. Such a tapered frame and basket structure equipped with a swinging gate enables the carts to be nested together to save storage space in a super market and this is the feature which plaintiffs contend constitutes patentable subject matter."

The conclusion that the patent is invalid was based on the finding that only two features of the structure had any claim to novelty, that is, the tapering of the basket's sides (and other side frame members of the cart), and the hinging of the rear end of the baskets at the top, and that these two features did not require invention over the prior art since they constituted "merely a natural application of the old principle of nesting or telescoping multiple units of the same kind for the purpose of saving space in storage or in shipment." See the opinion of the District Court, 96 F.Supp. 61, 65.

Evidence relating to the prior art was considered by the court. Grocery carts with movable baskets had been made and used for a long time prior to the application for the patent; and the new features which distinguish it embodied the nesting device or principle which has long been known in the handling of familiar articles, such as paper cups or flower pots, wooden or metal baskets and folding chairs. In 1933 Dellert secured a patent on a device for the horizontal nesting of metal chairs wherein he disclosed the use of identical frames having a tilted bottom with tapering or converging sides, so that the frames could be nested when they were pushed together. Watson employed the same idea with modifications in designing the frame work of the grocery carts so that they would nest or telescope.

An earlier use of similar methods was disclosed in the experience of the Archer Iron Works of Chicago, Illinois, which twenty-five years ago manufactured truck bodies so designed as to save space in shipping. The sides of the truck bodies were tapered so that they could be nested and some of them were furnished with swinging gates inside the body which, like the ends of the Watson baskets, were hinged at the top so that they could be pushed up in order to permit the entrance of another body horizontally in the nesting position.

■ Obviously this evidence was relevant to the issue of validity, for even though it was insufficient to show complete anticipation, it did outline the new and useful features of the patented structure and

showed how similar problems had been solved under analogous circumstances. The plaintiff, however, presented countervailing testimony for the purpose of showing that however simple the solution now appears, it had defied the industry until Watson's invention, and that as soon as that was made known it was universally adopted by the industry and to a very great extent supplanted all prior structures. The contention of the plaintiff was that this testimony should be considered in order to show that his discovery was not merely the result of ordinary mechanical skill, but in fact was clothed with the quality of invention, for otherwise the needed improvement in an article of trade widely and constantly used in many locations throughout the country from coast to coast would have been found by some one of its many users.

In support of this theory, the plaintiff offered testimony tending to show that many efforts had actually been made by persons with practical experience in the art to improve shopping carriers and to produce a more satisfactory article. The proffered testimony related in part to numerous patents issued in this field during the two decades prior to the Watson application and to constant efforts of manufacturers of folding carts, who availed themselves of engineering experience, to improve the design and efficiency of their output. This testimony, however, was regarded as irrelevant and immaterial in the trial court and was either rejected or admitted only for the purposes of the record. The judge entertained the view, since it was shown that no one prior to Watson had solved the difficulty presented by the bulky size of the grocery carts in use, that it was unnecessary to encumber the record with the proffered evidence, and that it made no difference how many persons had tried to solve the problem unsuccessfully if the article finally produced did not involve the exercise of inventive genius.

■ Without attempting to assess the value of the proffered evidence, indeed we are in no position to do so since the defendant was not called upon to controvert or explain it, we think that it is at least

entitled to consideration; for it bears on the question whether in fact the disclosures of the patent involved invention. When it is shown that a mechanical problem has persisted for some time, and men of ordinary skill in the art have failed to meet it when it is to their interest to do so, there is at least some ground for the conclusion that it was beyond their capacity. Such a circumstance has not infrequently been held sufficient to carry a discovery across the inventive line. Thus in the well known case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523, a very simple change in paper making machines solved a difficulty that had long plagued the industry and was given the status of invention, largely because it had been long sought in vain by practical men in the field. The court said, 261 U.S. at page 68, 43 S.Ct. at page 330: "The fact that in a decade of an eager quest for higher speeds this important chain of circumstances had escaped observation, the fact that no one had applied a remedy, for the consequent trouble until Eibel, and the final fact that, when he made known his discovery, all adopted his remedy, leave no doubt in our minds that what he saw and did was not obvious, and did involve discovery and invention." See also Oles Envelope Corp. v. Baltimore Paper Co., 4 Cir., 89 F.2d 279, 285; Oates v. Camp, 4 Cir., 83 F.2d 111, 115; Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 919; Safety Car Heating & Lighting Co. v. General Electric Co., 2 Cir., 155 F.2d 937, 939; Pointer v. Six Wheel Corp., 9 Cir., 177 F.2d 153, 160.

We think that the validity of the patent must be considered anew in the light of any competent evidence that may be offered along the lines above described, and that the judgment should therefore be reversed and the case remanded for a new trial, without prejudgment on our part and without prejudice to the right of either party to litigate any question which is raised by the pleadings in the case, including the charge that the patent was obtained from the Patent Office through collusive action between the parties to the interference proceeding.

Reversed and remanded.