39 C.C.P.A.(Patents)

## In re ROSSMAN.
### Patent Appeal No. 5829.

United States Court of Customs
and Patent Appeals.
Feb. 18, 1952.

---

Emery, Holcombe & Blair, Washington, D. C. (Amasa M. Holcombe, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, ` JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

Appellant here seeks reversal of the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner denying three (all) of the claims of appellant's application for a patent for alleged improvements in building construction.

It is thought that the nature and objects of the alleged invention may be discerned from the claims, which read:

"11. A building construction of the character described comprising a plurality of separate alined apartment units, each unit including at least one room, a roof covering and spaced above said units, a main access corridor in the building located parallel with and adjacent to a plurality of said units and into which said units open, said corridor being of less height than the adjacent rooms, an upper corridor directly over said access corridor of a height to provide working space between the floor and the roof of said upper corridor and to give access to the spaces under the roof above said units, and an air conditioning conduit located in the lower part of said upper corridor extending parallel to said alined units and communicating therewith to provide a direct passage for air between said conduit and upper part of the interior of each unit, whereby all electric conduits and service and supply mains for said units may be housed contiguous to said corridor and accessible for repairs.

"12. A building construction as set forth in Claim 11 in which each apartment unit comprises a room opening into said main corridor and a garage alongside of and opening into said room.

"13. A building construction as set forth in Claim 11 in which the apartment units are alined in two groups disposed on opposite sides of the main corridor and there are two air conditioning conduits, one at each side of the upper corridor."

The brief for appellant dissects the claims, emphasizing certain features as follows:

*Claim 11* specifies the following elements:

(a) a plurality of *apartment units* each having at least one room

(b) alined along a *main access corridor* of less height than the rooms,

(c) a *roof* covering and spaced above said rooms and main corridor

(d) enclosing an *upper corridor* having accessible working and pipe space alongside and over said rooms, and

(e) an *air conditioning conduit* in the lower part of said upper corridor opening laterally into the upper part of the adjacent rooms.

*Claim 12* specifies in addition that each apartment unit (a) comprises a *room* opening into the corridor (b) and a *garage* alongside of and opening into said room.

*Claim 13* specifies two groups of apartment units (a), one on each side of the main corridor (b), and two air conditioning conduits (e), one at each side of the upper corridor (d), otherwise all as set forth above in connection with Claim 11.

"Thus the claims are characterized by the arrangement and relative heights of the rooms and main corridor and upper corridor and roof, first, to provide concealed ducts for conducting the air (either heated or cooled or humidified) directly into the room below the ceiling level and second, to conceal and give ready access to all service mains, conduits, wires and facilities usually found in modern hotels within a minimum overall height of structure; thereby (1) saving in first cost by economizing space, (2) saving in cost of maintenance by exposing all pipes etc. that are normally in the walls and floors for periodic inspection and repair, and (3) at the same time permitting a low eaves and roof design of external architecture appropriate for the type of accommodations provided." (Italics quoted.)

The Primary Examiner rejected the claims upon two grounds: first, as being unpatentable over prior art disclosed in three patents; and second, as "being directed to aggregations."

As to the latter ground the board said, "We do not sustain this rejection since, in our opinion, the claims are directed to a unitary structure." So, we are called upon to consider only the rejection based upon prior art.

The three patents cited as references are: Hatch, 288,332, Nov. 13, 1883, Earle, 1,654,-683, Jan. 3, 1928, Coe, 2,107,523, Feb. 8, 1938.

The structure may be visualized from the following excerpt from the official statement of the Primary Examiner after the appeal had been taken to the board, the numerals identifying specific features shown in drawings being deleted as indicated by the asterisks:

"It is described particularly with relation to a single story tourist camp.

"The floor plan of the embodiment illustrated is generally of H-shape and includes a transverse, central portion * * * having two lateral extensions or continuations, * * *. Additional portions * * are at right angles to the main portion.

"The central part * * * is the main operational area and comprises a reception office portion * * * and a coffee shop * * *.

"At the left end of Figure 1 a single room * * * is shown which communicates thru a doorway with a garage * *. Next in order is a garage * * * which communicates with a room * * *. The rooms * * * also have doorways communicating with the main corridor * *. On the opposite side of the corridor * * is an arrangement of rooms and garages similar to those * * * [above] described.

"The corridor * * * is of less height than the living quarters on either side and above it is a utility corridor, * * *.

"Entrance openings are provided on either side of the [utility] corridor * * * for the purpose of giving workmen access to service pipes * * * and wiring facilities or conduits in the space between the ceilings of the described rooms and the roof * * *.

"Air conditioning ducts * * * on the floor of the corridor * * * provide a direct passage for air to the upper part of the rooms."

Specifically, claims 11 and 13 were rejected below as unpatentable over Hatch in view of Coe and claim 12 on a combination of Hatch and Coe in view of Earle.

The Hatch patent, issued November 13, 1883, was for an apartment house. It was cited by the Primary Examiner as showing

a corridor communicating with rooms on either of its sides.

In the brief for appellant it is said, in substance, that there is nothing in the Hatch patent which in any way suggests appellant's type of multiple-room, low-roof, one-story structure, nor of the arrangement of superimposed corridors, each of less height than the room units by which accessible space is provided for concealed service mains and connections along with unobstructed access to the rooms.

It may be conceded that the Hatch patent does not show a one-story structure having a low roof, nor does it show corridors having ceilings lower than the ceilings of the rooms adjoining the corridor as does appellant. The drawings do not show a complete building structure, but do show floor plans. It is clear, as said in the official statement of the Primary Examiner, that all of claim 11 down to the phrase "said units" reads on the patent to Hatch, except as to the limitation "said corridor being of less height than the adjacent rooms."

Surely no invention is involved in putting corridors in a one-story building having a low roof. As for the low ceiling, we could not regard as skilled in the building art any architect or carpenter who could not plan or frame a structure so that the ceiling of a corridor would be lower than the ceiling of adjoining rooms and then imposing an upper section, or corridor, above the lower one to provide a passage for air and for conduits and other supply mains.

The Coe patent evidently was cited as meeting the provision in the claims for "an air conditioning conduit located in the lower part of said upper corridor extending parallel to said alined [apartment] units and communicating therewith * * *." It is broadly entitled "Building Structure." One figure of the drawings indicates a building of several stories. The specification recites that its main object is "to provide a building structure adapted for a residence, store or the like in which the walls are peculiarly adapted for use in connection with heating, ventilating and air conditioning the interior of the building." In his statement the Primary Examiner points out the presence in this patent of an air conduit

which, extending along and through apertures, "communicates with alined superimposed rooms for air-conditioning the same." We note that in the specification the conduit is referred to as an inner "duct," or a series of inner ducts, connected with "a common manifold which, in turn, is connected by feed pipes with a suitable hot air furnace."

With respect to the Coe patent the brief for appellant states: "* * * There is no attempt made in this patent to utilize either upper corridor space or attic space for serving the rooms below, the lateral conduits being located between the ceiling of one room and the floor of the room above, thereby substantially increasing the overall dimensions of the building both horizontally and vertically. * * *"

As to this it seems sufficient to say that the claims do not present any dimensional limitation which is asserted to be critical, nor is there any specific claim of a location for the housing of the electric conduits and service and supply mains in appellant's corridor sufficient to differentiate it definitely from the location of the same instrumentalities in the Coe patent. Claim 11 simply states that the conduit for them is located in the lower part of the upper corridor. Even if there were such differentiation, however, it is not seen how, upon the record here presented, it would render the claims patentable.

The Earle patent was cited with particular reference to the limitation in claim 12 which recites that "each apartment unit comprises a room opening into said main corridor and a garage alongside of and opening into said room."

The patent shows individual basement garages with interior and exterior doors, the garages being built into residential buildings, and shows also superimposed individual garages to which access may be had from different ground levels.

We do not think there is anything inventive in appellant's limitation in view of the Earle patent. There is no invention in placing a conventional door where one wishes such a door to be. In summary the board said: "We have given careful consideration to the arguments presented by

appellant at the hearing and in the brief, but are not convinced of error in the conclusion reached by the Examiner. While it is conceded that the references relied upon do not show the specific construction recited in claims 11 and 12 in respect to the corridor structure of less height than the adjacent rooms whereby an upper utility corridor is provided, we do not believe that the incorporation of this feature involves the exercise of the inventive faculties, it being routine practice in designing building structures to adapt and modify basic architectural plans to provide for air ducts and other utility services. Nor does the fact that appellant's construction has attracted favorable attention contribute anything in a patentable sense to the structure claimed. As for claim 12, the inclusion of a garage as an element of the apartment unit adds nothing upon which patentability can be predicated since a garage in conjunction with living quarters is not only old, as shown in Earle, but is also a well-known adjunct in the type of construction herein considered. Accordingly, we sustain the rejection of claims 11, 12 and 13 as failing to distinguish patentably from the prior art."

We find ourselves in accord with the foregoing views, and the decision of the Board of Appeals is affirmed.

Affirmed.

WORLEY, J., dissents.

O'CONNELL, Judge (dissenting).

The appealed claims have been finally rejected here on a variety of views summarized on the question of patentability in the board's decision and incorporated by quotation in the opinion of the majority as the views of this court. The disallowance of the claims ignores the fundamental facts expressly conceded by the board that appellant's claimed structure not only is new and desirable but also unquestionably different from any one of the structures of the references relied upon as a ground of rejection. As appellant correctly asserts in his brief: "To say that such an accomplishment is lacking in invention is to disregard the plain facts. Tourist camps have been in course of development for thirty years, the Hatch apartment house patent is over sixty-five years old, and even the Earle and Coe patents have been out for twenty and ten years respectively; and in spite of the ever present demand for better housing, no one conceived of the simple and inexpensive and highly satisfactory solution of the problem of multi-room-and-garage-unit construction until appellant hit upon that claimed in his application here involved."

The claims were rejected by the examiner not only as unpatentable over the disclosure of the cited prior art but also "as directed to aggregations." The Board of Appeals expressly overruled the examiner on his rejection of the claims on that ground but affirmed his action with respect to the rejection on the prior art. In so doing the board held further that it is "routine practice in designing building structures to adapt and modify basic architectural plans to provide for air ducts and other utility services."

The latter statement, which appellant concedes to be axiomatic, is the real and inherent ground of the rejection. The cited art employed here discloses, however, that it has been customary in the Patent Office to grant patents for building structures when, in its opinion, the faculty of invention has resided in the disclosure and claims submitted by the applicant. This court has advanced the same legal principles and allowed the claims when the applicant has complied with the requirements of the law.[1]

The Solicitor for the Patent Office in urging the action which the majority have taken quoted authorities to the effect that when it comes to the allowance of patent claims, we cannot be unmindful of the fact that recent decisions of the Supreme Court now indicate a new and stricter interpretation of the statute on the question of patentability. To emphasize that proposition here, the solicitor has quoted more than twenty lines from the decision of Great Atlantic & Pacific Tea Co. v. Supermarket

---

1. In re Tourtellotte, 115 F.2d 344, 28 C.C.P.A.,Patents, 720; In re Rolph, 102 F.2d 875, 26 C.C.P.A.,Patents, 1064.

Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. He has quoted also other lines from the decision of Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L. Ed. 1644, to the effect that there should be no allowance of patent claims, unless those claims define some substantial innovation, "an innovation for which society is truly indebted to the efforts of the patentee."

The proper test for the allowance of patent claims, such as we have here, as I construe the statute, was formulated by Mr. Justice Bradley for the Supreme Court in the case of Webster Loom Co. v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177 to the effect that: "It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. * * *"

The late Judge Hatfield applied the rule just quoted in the allowance of claims covering plans for the site and arrangement of an apartment house or structure. No valid reason has been disclosed either by the tribunals of the Patent Office or by the opinion of the majority for ignoring or discussing that decision; namely, In re Tourtellotte, supra.

The distinguished jurist, Learned Hand, writing for a unanimous court in the recent case of Philip A. Hunt Co. v. Mallinckrodt Chemical Works, 2 Cir., 177 F. 2d 583, 586–587, deemed constrained to accept and follow the ruling previously expressed by Judge Hatfield, speaking for a unanimous court, on the ground that his judicial views were persuasive as an experienced expert on matters relating to patentability and should be followed "save in a case of very clear difference of opinion". The guidance of the authorities just cited persuade me to dissent from the views adopted by the majority and to urge the allowance of the appealed claims.

Furthermore, the language of the A. & P. case referred to by the Solicitor for the Patent Office may be readily misapplied and interpreted as laying down a hard and fast rule for resolving the question of invention in all cases involving combination patents.[2] But, as correctly pointed out by the United States Court of Appeals for the Fourth Circuit in the recent case of Watson v. Heil, 192 F.2d 982, 985: "When it is shown that a mechanical problem has persisted for some time, and men of ordinary skill in the art have failed to meet it when it is to their interest to do so, there is at least some ground for the conclusion that it was beyond their capacity. Such a circumstance has not infrequently been held sufficient to carry a discovery across the inventive line."

There is no occasion in this case, as I see it, to adopt or extend a new and unwarranted construction of the patent law and thereby place our great host of inventors, scientists, and discoverers in a strait jacket nowise authorized by Article I, section 8 of the Constitution of the United States, which made provision for those inventions and discoveries which tend "To promote the Progress of Science and useful Arts," including inventions for improvements upon existing disclosures. The decision of the Board of Appeals should be reversed.

2. McCord Corp. v. Beacon Auto Radiator Co., Inc., Cust. & Pat.App., 193 F.2d 985.