40 C.C.P.A.(Patents)
## Application of HARDING.
### No. 5990.

United States Court of Customs
and Patent Appeals.
June 3, 1953.

James J. Shanley, Washington, D. C. (Paul T. O'Neil, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE and JACKSON, JJ.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 26 and 28 of appellant's application for a patent relating to building constructions of the prefabricated type, including a plurality of sections or bays providing a large floor area. No claims were allowed and the appealed claims were rejected on the following art of record:

Goodrich 1,350,493 Aug. 24, 1920
Joy (Australian) 115,871 Sep. 15, 1942
Jackson et al. 2,341,044 Feb. 8, 1944

The involved structure appears to be obvious from a reading of the claims, of which claim 26 is illustrative:

"26. In building construction, the combination comprising supporting means, a first set of longitudinally spaced laterally extending ribs supported at corresponding lower ends by said supporting means, the lower ends of the ribs lying in a straight line, the other corresponding ends of said set terminating in predetermined spaced relation to and above the supporting means, each rib being in the form of an arc of a circle of 120 degrees in length, the ribs being arranged in parallel vertical planes, structural means supporting the termini of the ribs, a second set of longitudinally spaced laterally extending ribs arranged with corresponding ends contiguous to the termini of the first set of ribs and supported by said structural means, the other corresponding ends of said second set terminating in predetermined spaced relation to and above the supporting means, each rib of the second set being in the form of an arc of a circle of 60 degrees in length, the ribs of the second set being arranged in parallel vertical planes, and structural means supporting the termini of the second set of ribs, the radii of all the ribs being substantially equal and the centers of said arcs of said first and second sets of ribs falling respectively in two straight lines parallel to one another, the first claimed straight line and the last claimed two straight lines all lying in a common plane."

The alleged invention is thus summarized in appellant's brief:

"Appellant has provided a relatively large building construction made up of sets of arch ribs forming a building including any desired number of bays or sections of any desired length. The bays or sections are of equal height with their points of maximum height being coplanar and lying an equal distance above the foundation. This construction results from utilization of sets of arch rib elements of 120° and 60° in length with the elements having equal radius of curvature and with the centers of the arcs of each set of arch rib sections lying along parallel lines coplanar with the lower ends of one 120° arch rib section."

The board deemed it unnecessary to consider the patent to Goodrich in view of appellant's concession that it is old in the art to use arched-rib framework in buildings as disclosed by the reference.

The patent to Jackson et al. relates to containers for the storage of liquids or gases under pressure. It discloses intersecting spherical pressure tanks secured together by means of flat circular diaphragms. The examiner noted in his statement of November 29, 1951 that the Jackson disclosure teaches the use of a tank structure having side portions of 120° arcs and

intermediate roof portions of 60° arcs. There are approximately three pages of mathematical material submitted in the specification of the reference and the Solicitor for the Patent Office notes in his brief that the intermediate roof portions of Jackson et al, are each 60° of arc in extent and form bays of equal height, and the side portions of the upper half of the structure are each 120° of arc in extent.

The board in its decision remarked with respect to appellant's disclosure:

"It is true that with such [claimed] construction the height of the highest point of the intermediate section above the foundation is not equal to the radius of curvature of the rib element. This specific structure, however, is suggested in Jackson et al. wherein the highest point of the intermediate section is at the same level as the highest point of the end sections."

It is deemed appropriate to here quote the following excerpt from the specification of Jackson et al.:

"One of the principal advantages of our invention is that comparatively large structures may be built without requiring much, if any, additional support for the relatively thin sheet metal shell surfaces. The circular diaphragms which are an inherent part of our invention act to very efficiently support the membrane surfaces of our structure. In the case of very large structures it is desirable to reinforce or stiffen the diaphragms so that they will more effectively support the membrane surfaces and in cases where the structures are to be used to contain only relatively small internal pressures, the thickness of the material forming the shell may be insufficient to support the shells even with the assistance of the circular diaphragm. In such cases each individual spherical segment may be very simply supported by a central column and radial girder-like members such as are commonly used in large containers."

The patent to Joy relates to arched roof structures suitable for storage purposes,

hangars, etc. It provides an arched roof structure having curved sheets of relatively thin material, such as galvanized iron or fibro-cement, which are utilized to provide a structure wherein the arched roof is combined with props in such manner that large areas may be covered with great economy of material.

The intermediate section in the patent to Joy was thus described in the specification of his application:

"Each arch of a short span structure is a segment of a circle subtending an angle varying from 45° to 85°, and each arch of a larger span structure subtends an angle of from 60° to 90°. Each arch may comprise one or more sheets and the said sheets may be corrugated."

As noted by the board, and as quoted from the brief of the solicitor, Figures 6, 7, and 11 of the drawings accompanying the specification of Joy disclose—

"foundation means, segmental arch shaped cover means and two intermediate support means. The side sections are 90° of arc in extent and the intermediate portion can be from 45° to 85° in extent."

The examiner rejected both of the appealed claims on the disclosure of Joy in view of Jackson et al. and Goodrich. He held, and the board was in complete agreement with his reasons for rejection, that no invention would be involved in forming the structures of Joy with side portions 120° in length, as taught by Jackson et al., and substituting a frame work of ribs, such as shown by Goodrich, for the spaced braces. More specifically, the final position of the Patent Office, is correctly stated in the brief for appellant:

"Claims 26 and 28 have been rejected as unpatentable over Joy in view of Jackson et al. The Patent Office admits that claim 26 defines over Joy by the recitations that the first set of ribs are in the form of an arc of a circle of 120° in length and that the second set of ribs are in the form of an arc of a circle of 60° in length, but takes the position that these limitations are **not**

patentable since Joy discloses, in Figures 6, 7 and 11, the use of end sections of 90° in length and an intermediate section which can be from 45° to 85° in length. The Patent Office also admits that in the Joy construction the height of the highest point of the intermediate section above the foundation is not equal to the radius of curvature of the rib element, but holds that this specific structure is suggested in Jackson et al wherein the highest point of the intermediate section is at the same level as the highest point of the end sections. The Patent Office then further admits that the limitation that the straight parallel lines passing through the centers of the arcs of the sets of ribs lie in a common plane with the lower ends of the first set of ribs is not shown in Joy, but holds that this difference does not present a patentable advance over Joy alone, or in view of Jackson et al."

Appellant notes many exceptions to the concurring decisions of the tribunals of the Patent Office, which frankly admitted that there are structural differences between the applicant's structure and those of the cited references, singly and collectively, but held that no patentable invention was involved in making the changes upon which appellant relies.

Mere novelty does not however connote patentability, particularly in the building art wherein it is regarded as routine practice in designing new structures to adapt and modify basic architectural plans to provide for better, more economical, and more desirable housing. In re Rossman, 194 F.2d 711, 39 C.C.P.A., Patents, 840. We have that situation defined by appellant's rejected claims, and it is correctly noted in the solicitor's brief:

"Under the new law, which is now controlling in further proceedings in applications pending on January 1, 1953, a patent may not be obtained though the invention is not identically disclosed or described in the prior art, unless it involves something unobvious. 35 U.S.C. 103. Refusal of a patent is proper, under the new law, as it was under the old, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art of which said subject matter pertains."

In view of the art of record and the exposition thereof as defined by the concurring decisions of the Patent Office, we think that a person skilled in the art would have been able, without exercise of the inventive faculty, to have effected the improved result for which appellant seeks to obtain a patent.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.

JACKSON, J., retired, was recalled to participate in this case in place of GARRETT, C. J.