BATSON–COOK COMPANY, Incorporated, Appellant,

v.

INDUSTRIAL STEEL ERECTORS, a partnership composed of Selna M. Walker and Robert W. Cockrell and Selna M. Walker and Robert W. Cockrell, individually, Appellees.

No. 17086.

United States Court of Appeals
Fifth Circuit.

July 15, 1958.

Rehearing Denied Sept. 12, 1958.

Harold F. Herring, W. H. Sadler, Jr., Sadler & Sadler, Birmingham, Ala., for appellant, Batson-Cook Co., Inc.

James E. Clark, Birmingham, Ala., London, Yancey, Clark & Allen, Birmingham, Ala., of counsel, for appellees.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

As this case comes to us, it is within a very narrow frame. Essentially it is the simple and oft-recurring problem: does the indemnity agreement involved require the Indemnitor to save harmless the Indemnitee against the consequences of the Indemnitee's negligence?

There is nothing unique about the facts in this case. Indeed, concentrating entirely on the construction of the indemnity agreement itself, the Indemnitee does not here question the use of Summary Judgment. On this record, in this context, it means that the injuries at the bottom of this controversy were occasioned by the negligence of the Indemnitee, with neither claim nor proof that Indemnitor had any tortious responsibility therefor.[1] The formal consent jury verdict in the main case and judgment entered thereon in favor of the original plaintiff against Indemnitee for substantial recoveries likewise established on the record that no contributory negligence of the injured person was involved. Hence the record shrinks the prob'em to whether the agreement protects the Indemnitee against the consequence of its sole negligence.

The setting, too, was a normal everyday affair. The Indemnitee was a general contractor for construction of an Alabama hospital. Indemnitor was the subcontractor whose contract[2] called for it to furnish "all materials, labor, supervision, tools, equipment scaffolding" required to install and complete erection

---

1. To Indemnitee's Third Party Complaint based solely on the contractual indemnity agreement, Indemnitor urged a motion to dismiss which, by consent and pretrial order, was, together with depositions, affidavits, and testimony from the main case, treated as a motion for summary judgment. After this was sustained and final judgment in favor of Indemnitor was entered on it, Indemnitee sought, but was denied leave to file an amended Third Party Complaint urging for the first time that the basic injuries were due to the sole negligence of Indemnitor and asserting non-contractual indemnity as well. The latter order was expressly encompassed in the Notice of Appeal, but it was not briefed or argued, so the question whether the District Court, relying on Simms v. Andrews, 10 Cir., 118 F.2d 803; United States v. City of Brookhaven, 5 Cir., 134 F.2d 442, abused its discretion in not allowing an amendment after judgment is not before us.

2. The agreement between general contractor (Indemnitee) and subcontractor (Indemnitor) was the boilerplate " *   * Standard Form of Subcontract" whose title page stated "The sixth edition of this form has received the approval of the Associated General Contractors of America * * * [and various contractor trade associations]" and then sounded the warning: "Copyright 1915–1925–1937 by the American Institute of Architects, the Octagon, Washington, D. C. Reproduction of the material herein or substantial quotation of its provisions without permission of the American Institute of Architects violates the copyright laws of the United States and will be subject to legal prosecution."

Presumably the copyright monopoly was intended to keep Clause 7, note 4, infra, from being copied.

of structural steel. The original plaintiff was an employee of Indemnitor (subcontractor). He was seriously injured when a ladder installed by general contractor (Indemnitee) slipped from faulty installation by Indemnitee's servants.

■ Equally uncontroversial is the law to be applied. Indemnitee and Indemnitor, in briefs which reflect the consummate skill of articulate craftsmen in exhaustive research that leaves naught for independent probing by us, are at one on what the law is, not only generally, but in Alabama and in the Fifth Circuit as well. Their unity is such that it is not even the situation in which one claims and the other denies that "an exception" to the general rule exists, or in which one affirms, the other refutes, that one or more specific precedents represent a departure from the straight and narrow path. They are thus in complete agreement that the problem inexorably

begins and ends as one of construction of the specific contractual terms, and that in this process it is the law which steps in and tells the parties that while it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence.[3] The question then is: does the specific contract in dispute clearly reflect such a purpose?

Since the contract confessedly does not contain the talismanic words "even though caused, occasioned or contributed to by the negligence, sole or concurrent" of the Indemnitee, or like expressions, the Indemnitee seeks to find the equivalent clear intent in other language of the agreement. Specifically, it contends that when indemnity Clause 7 of the contract[4] refers expressly to any and all

3. We have many times echoed these familiar principles both in cases dealing directly with the point, or those dealing with or bearing on a persuasive significant analogous situation: Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen, 5 Cir., 74 F.2d 983; Employers Casualty Co. v. Howard P. Foley Co., 5 Cir., 158 F.2d 363; W. C. Shepherd Co. v. Royal Indemnity Co., 5 Cir., 192 F.2d 710; Standard Oil Co. of Texas v. Wampler, 5 Cir., 218 F.2d 768; cf. Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79, and Martin v. American Optical Co., 5 Cir., 184 F.2d 528.

This includes, of course, those of our decisions in which the contract was construed to cover the Indemnitee's negligence: Thomas v. Atlantic Coast Line R. Co., 5 Cir., 201 F.2d 167; Alabama Great Southern R. Co. v. Louisville & N. R. Co., 5 Cir., 224 F.2d 1, 50 A.L.R. 2d 1302.

To these may be added many others collated by the parties here both on the general proposition: Wallace v. United States, D.C.Wash., 16 F.2d 309, affirmed, 9 Cir., 18 F.2d 20; Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15; Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Company, 7 Cir., 195 F. 2d 467; Ocean Accident & Guarantee Corp. v. Jansen, 8 Cir., 203 F.2d 682; Turner Construction Co. v. W. J. Halloran Steel Erection Co., 1 Cir., 240

F.2d 441; 27 Am.Jur., Indemnity, § 15, p. 464; Pocket Parts, 27 Am Jur., Indemnity, § 15, p. 142; 42 C.J.S., Indemnity § 12, p. 580; 38 A.L.R. 580; Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173; 175 A.L.R. at pages 29, 30, 144; 143 A.L.R. 316; as well as those cases in which the contract was construed to cover indemnitee's negligence: Indemnity Ins. Co. of North America v. Koontz-Wagner Electric Co., 7 Cir., 233 F.2d 380; Aluminum Co. of America v. Hally, 8 Cir., 200 F.2d 257; Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962.

4. "Section 7. Subcontractor assumes entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any injury, or alleged injury (including death) to any person, or damage, or alleged damage, to property of Contractor or others sustained or alleged to have been *sustained in connection with or to have arisen out of or resulting from the performance of the work* by the Subcontractor, his subcontractors, agents, servants and employees, including losses, expenses or damages sustained by Contractor, and agrees to indemnify and hold harmless Contractor, his agents, servants, and employees from any and all such losses, expenses, damages and claims, and agrees to defend any suit or action brought against them, or any of

losses "sustained in connection with or to have arisen out of or resulting from the performance of the work by subcontractor * * *," this all-inclusive language reflects with sufficient clarity a purpose to impose these extreme obligations on Indemnitor. To its arguments, it marshals as well some specific precedents which, paying their individual homage to the universal rules, note 3, supra, construed somewhat similar language in specific contracts as indicating the purpose to indemnify against the Indemnitee's negligence.[5]

But we do not think that these arguments are persuasive, nor do we believe that the matter can or ought to be resolved by matching this or that case against language which, by the very nature of things, varies as scriveners set out to draft these instruments or businessmen uncritically put their signatures on printed traditional forms. The problem, as we said before, begins and ends as one of construction in the light of general principles that are now so well rooted that the business world must reckon with them.

The phrase stressed heavily is indeed broad. But the broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit. In the atmosphere which the general principles reflect, the phrase is really but a means of defining the scope of the indemnity, that is, the area in which it is applicable, not the legal reach of it once it applies. In this respect it served a useful function in broadening the physical and actual situations which might be covered. It was not limited to losses resulting out of the performance of the work which might have required the actual doing of something directly related to subcontractor's undertaking. To these situations were added those "arising out of" such performance. And then to both was added situations which involved neither but which, in a realistic sense, could properly be said to have been "sustained in connection with" such work. It was really directed toward the problem dealt with in Employers' Casualty Co. v. Howard P. Foley Co., 5 Cir., 158 F.2d 363, and others like it.

While the language is well adapted to defining the areas of the application, it is not peculiarly apt to define causes either in terms of physical or legal responsibility. An injurious incident could arise out of, or result from, or be sustained, in connection with the performance of the work whether the real or legal cause was that of the Indemnitor, the Indemnitee, or both, or, equally likely, unrelated third parties. And to these questions as to what parties brought about the incident, there would have to be added inquiry whether any of those actually responsible for it were so in law. If it could cover any one or all of the three actual possibilities and any one or more or all of the legal possi-

them, based on any such alleged injury or damage, and to pay all damages, costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom." Emphasis supplied.

5.  Buffa v. General Motors Corp., D.C., 131 F.Supp. 478, relying on Ruddy v. New York Central R. Co., D.C.N.Y., 124 F. Supp. 472, reversed on other grounds, 2 Cir., 224 F.2d 96; Smoke v. Turner Construction Company, D.C.Del., 54 F.Supp. 369; J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265; City of Cleveland, Ohio v. Baltimore & O. R. Co., 6 Cir., 71 F.2d 89; Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., 6 Cir., 64 F.2d 638; Chicago & Northwest R. Co. v. Chicago Packaged Fuel Co., 7 Cir., 195 F.2d 467; Atlantic Coast Line R. Co. v. Robertson, 4 Cir., 214 F.2d 746; Russell, for Use of Continental Casualty Co. v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415; Northern States Co. v. A. Finkl & Sons Co., 8 Ill.App.2d 419, 132 N.E.2d 59; Turner Construction Co. v. Belmont Iron Works, D.C.Pa., 158 F.Supp. 309.

**414**

bilities, it has hardly spelled out that it will cover the specific and limited, but serious, situation of negligence by the Indemnitee. Of course that is just the very reason for the general principles now universally accepted. For this general approach is bottomed on the concept that this must be specifically, not generally, prescribed. It is an area in which to cover *all* does not include one of the parts. Despite this emphasized phrase, it is apparent that the clause is lacking in that positive directness which the law regards as essential.

The construction of this contract by the District Court was consistent with the applicable principles. It was right.

Affirmed.