Douglas N. SOUTHARD, By and Through his parents and next friends, Edgar F. SOUTHARD and Geraldine Southard, Plaintiffs-Appellants,

v.

Vincent MILES, Defendant-Appellee,

and

Children's Hospital Association, a Colorado corporation, Charles R. Hawes, Mary Smotherman, also known as Mary Martorano, and Thomas Lowe, Defendants.

No. 84SA98.

Supreme Court of Colorado,
En Banc.

March 3, 1986.

892

Bragg & Dubofsky, P.C., Douglas E. Bragg, James A. Cederberg, Denver, for plaintiffs-appellants.

Cooper & Kelly, P.C., Elizabeth A. Starrs, Denver, for defendant-appellee.

QUINN, Chief Justice.

The appellant Douglas Southard, through his parents and next friends, appeals from an order granting the summary judgment motion of the appellee Dr. Vincent Miles. Southard claims that summary judgment was improperly granted because there is a genuine issue of material fact as to whether he is "a person under disability" so as to suspend the running of the statutory periods of limitation and repose in § 13–80–105, 6 C.R.S. (1985 Supp.), which deals with medical malpractice claims. Southard alternatively contends that the application of section 13–80–105 in a manner that barred his claim would deprive him of due process and equal protection of the laws.[1] We find it unnecessary to address Southard's constitutional arguments, as we conclude that there is a genuine issue of material fact with respect to whether Southard was under sufficient disability as to toll the applicable periods of limitation and repose. We therefore reverse the summary judgment in favor of Dr. Miles and remand the case to the district court for further proceedings.

## I.

On August 13, 1974, plaintiff Douglas Southard, then twenty years old, underwent surgery at Denver Children's Hospital to correct scoliosis, a congenital curvature of the spine. Following the operation, and while Southard was still at the hospital, hospital personnel discovered that Southard's heartbeat was irregular. Although premature heart contractions often occur in normal patients for a short time following surgery, one of Southard's surgeons, Dr. Haber, referred him to the cardiology unit of the hospital. The cardiology unit administered two separate electrocardiogram examinations on August 15 and August 16, 1974. Dr. Mary Martorano was present at the administration of the August 15 EKG and prepared a short note interpreting the findings. Dr. Martorano indicated that at this time the plaintiff was experiencing premature contractions of the heart and recommended further procedures to determine the cause. At the end of the

[1]. Because Southard raised an issue concerning the arguably unconstitutional application of section 13–80–105, 6 C.R.S. (1985 Supp.), so as to bar his claim against Dr. Miles, we accepted jurisdiction of Southard's appeal pursuant to sections 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

note, before her signature, Dr. Martorano included the words "will follow." [2] No other report was prepared for the August 15 EKG. The August 16 electrocardiogram was interpreted by Dr. Charles Hawes, who was the Director of the Pediatric Cardiology Department at the hospital. Dr. Hawes observed the irregularity in the heartbeat and concluded that the tracings were "highly suggestive of Wolff-Parkinson-White syndrome."

Wolff-Parkinson-White syndrome is an abnormality of the electrical conduction pathways of the heart that can trigger uncontrolled heartbeats. Under some circumstances the condition, if left untreated, can lead to cardiac arrest and sudden death. The syndrome can be controlled in some cases by medication and in others by limiting the patient's physical activities. With foreknowledge of the condition and prompt medical care, a patient suffering cardiac arrest as a result of Wolff-Parkinson-White syndrome can usually survive without receiving permanent injury.

Southard was discharged from the hospital on August 24, 1974. There was no follow-up by the hospital staff regarding his abnormal heart activity, and no one at the hospital had ever informed him or his parents that he possibly suffered from Wolff-Parkinson-White syndrome. On September 12, 1976, Southard went into cardiorespiratory arrest, lapsed into a coma, and was temporarily deprived of the oxygen supply to his brain. By the time he was taken to a hospital emergency room and revived, he had sustained irreversible brain damage.

In late 1977 or early 1978, Dr. John Graham and Dr. Robert Marshall, Southard's treating physicians, discovered Dr. Hawes' interpretation of the August 16 electrocardiogram in Southard's hospital chart and advised Southard's parents that the Wolff-Parkinson-White syndrome accounted for their son's collapse on September 12, 1976. Southard's parents consulted an attorney in April 1979. On October 11, 1979, Southard's present attorneys filed a complaint on behalf of Southard in his individual capacity against Denver Children's Hospital, Dr. Thomas Lowe, his principal orthopedic surgeon, Dr. Martorano, and Dr. Hawes, alleging that they were negligent either in failing to diagnose Wolff-Parkinson-White syndrome or in failing to communicate the existence of the condition to him.

On March 3, 1980, Southard's attorney took Dr. Martorano's deposition. She testified that in August 1974 she was not a cardiologist, but rather a pediatric cardiology fellow, i.e., a student of pediatric cardiology. She stated that her activities were limited to recording and following the directions of Dr. Vincent Miles, who was the staff cardiologist at the hospital, and that her professional contact with patients would have been under his direction. A nurse's note included in Southard's medical records revealed that Dr. Miles was present with Dr. Martorano at the administration of the August 15 electrocardiogram.[3] There is no indication in the record, however, that Dr. Miles had any other direct contact with Southard.

On April 20, 1981, as a result of the information obtained from Dr. Martorano's

**2.** The note Dr. Martorano entered in Southard's hospital chart following the August 15 EKG read as follows:

> 8/15/74 Problem—Premature contractions Patient began having premature contractions—these don't show up on our 12 lead ecg. On looking in the monitor these were not excessively wide or bizarre—could be premature atrial or nodal beats. We need a long rhythm strip to assess this. This A.M.'s lytes (electrolytes) not back yet. Would consider the most likely etiology is either (1) anxiety (2) electrolyte imbalance. In any case these are not frequent enough to no drop in B/P (in

> fact the B/P is excessively high—could this be from blood volume increase?) Would not treat now. Will get rhythms strip & check lytes. Thank you—will follow.
> M. Smotherman

At the time the events in question occurred, Dr. Martorano was unmarried and went by the name of Smotherman.

**3.** That nurse's note read, in pertinent part, as follows:

> "EKG done by technician. Drs Miles & Smotherman here. No PCV's noted on monitor today."

deposition, Southard moved to amend his complaint to add Dr. Miles as a defendant. The other defendants agreed by stipulation. At the same time, Southard's parents were given party status in the capacity of next friends of their son.

Dr. Miles thereafter moved for summary judgment, claiming, as pertinent here, that Southard had failed to bring the action within the two-year limitation period and the three-year period of repose applicable to medical malpractice claims as set forth in section 13–80–105, 6 C.R.S. (1985 Supp.).[4] Southard countered the motion, arguing that he was a "person under disability" within the meaning of section 13–81–103(1)(a), 6 C.R.S. (1973), and that the two-year limitation and the three-year repose periods of section 13–80–105 were accordingly suspended by reason of his disability. In support of his position, Southard submitted affidavits from Dr. Roy Wright, a neurologist, Dr. Robert Marshall, a cardiologist, and Dr. John Graham, an internist, all of whom treated Southard for several years. These affidavits basically stated that Southard had incurred moderate to severe brain damage as a result of the injuries on September 12, 1976, that he had impaired memory and reasoning abilities, and that he was not capable of making decisions involving business, financial, and legal matters. Also submitted on Southard's behalf was an affidavit by Helen Woodard, a rehabilitation specialist who had evaluated Southard. Attached to Woodard's affidavit was her report of her examination which stated, in pertinent part, as follows:

Doug [Southard] has serious residual disabilities. These include loss of central vision in both eyes, spasticity of the left hand and leg causing dexterity problems and gait disturbance, memory deficits, and intellectual deficits. He also exhibits difficulty in decision making and planning and has poor judgment. In addition to these problems, Doug is unable to accept his deficits, and to perceive of himself as less than a fully capable and able-bodied person. He is aware on one level that he has extreme deficits, but is unable to begin to adjust to his limitations by changing ways of doing things.

Doug has great difficulty making even simple decisions, and he is not capable of always understanding, remembering, and following through with activities. This is a major deficit alone, but added to his inability to understand and exercise judgment, it becomes totally incapacitating. I would not feel Doug would be capable of handling his own funds, or of making critical decisions about his life.

\*   \*   \*   \*   \*   \*

Because of the multiple disabilities which Doug has, he will function as a totally disabled person. He will not be employable in any work setting unless it is a subsidized program. He will be unable to care for himself on a daily basis and will need personal care assistance on a routine and daily basis.

After hearing argument only on the applicability of section 13–80–105 to Southard's claim, the district court granted Dr. Miles' motion for summary judgment, giving no reasons in support of its order, and certified the judgment as final pursuant to C.R. C.P. 54(b).[5]

---

4. Dr. Miles also contended that summary judgment was proper because there was no evidence whatever of a physician-patient relationship between himself and Southard and that there was no evidence of negligence on his part. Southard, in constrast, claimed that there were genuine factual issues with respect to the existence of a physician-patient relationship, citing the notes from Dr. Martorano and the nurse concerning the electrocardiogram and information obtained at various depositions. The depositions, however, have not been made part of the record on appeal. Because the district court heard arguments only on the statutory limita-

tion and repose periods in section 13–80–105, 6 C.R.S. (1985 Supp.), and obviously granted summary judgment on that basis and no other, we have no reason here to consider any other issue at this time.

5. Southard thereafter moved to alter or amend the judgment in order to reinstate Dr. Miles as a defendant. The court held a hearing on the motion. Once again, the parties relied on the same evidence as argued at the summary judgment hearing and only argued whether Southard was "a person under disability" so as to toll the statute of limitations and repose. The court

Briefly stated, Southard contends that the summary judgment of dismissal must be reversed because a factual question exists as to whether he was so disabled by the cardio-respiratory arrest on September 12, 1976, as to suspend the running of the two-year limitation period and the three-year period of repose applicable to medical malpractice claims. A proper resolution of this contention requires us to evaluate whether the record does indeed raise a genuine issue of material fact as to Southard's disability status, and, if such a factual question exists, whether the statutory scheme relating to medical malpractice claims contemplates the tolling of the limitation and repose periods in the case of a person having such a disability. Before reaching the merits of Southard's contention, however, it is appropriate to briefly review the general standards applicable to a summary judgment motion and then to analyze the statutory limitation and repose periods for filing a medical malpractice claim and the circumstances under which those periods might possibly be tolled.

## II.

■ C.R.C.P. 56(b) provides that summary judgment shall be granted upon the motion of a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Because it is a drastic remedy, summary judgment should be granted only when the moving party demonstrates the existence of both the evidentiary and legal predicates for its entry. *E.g., Mastro v. Brodie,* 682 P.2d 1162 (Colo. 1984); *Gleason v. Guzman,* 623 P.2d 378 (Colo.1981); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970). The moving party bears the burden of establishing that no genuine issue of fact exists, and doubts in this respect must be resolved against the

moving party. *E.g., Tapley v. Golden Big O Tires,* 676 P.2d 676 (Colo.1983); *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978). In the present case, therefore, it was incumbent on Dr. Miles to demonstrate that there was no genuine issue at all with respect to the fact that Southard's claim against him was barred by the statutory periods of limitation and repose applicable to malpractice claims. With this procedural matter aside, we turn to the applicable statutory provisions that furnish the substantive standards for resolving this appeal.

## III.

Section 13–80–105(1), 6 C.R.S. (1985 Supp.), requires a party injured through the negligence of a doctor or a hospital to bring an action within two years "after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury." Subsection (1) of the statute also establishes a three-year period of repose by providing that "[i]n no event may such action be instituted more than three years after the act or omission which gave rise thereto," subject to the following exceptions: if the act or omission which gave rise to the cause of action was knowingly concealed; if the act or omission consisted of leaving an unauthorized foreign object in the body; or if the action is brought by or on behalf of a minor under six years of age on the date of the act or omission. *Mastro,* 682 P.2d 1162, 1166; *Austin v. Litvak,* 682 P.2d 41, 46 (Colo.1984) (plurality opinion). Subsection (2) of the statute provides that the "limitations period provided for in subsection (1)" shall not run during any period when a minor is under eighteen years of age and has no natural or legal guardian, but any action by or on behalf of the minor may be instituted within two years after a legal guardian is appointed or after the person "under such disability" reaches eighteen years of age,

denied Southard's motion to alter or amend,                again without offering any reason for its action.

whichever shall first occur.[6] Critical to our inquiry here is subsection (3) which states:

> For purposes of this section only, "person under disability" means a minor under six years of age, a person under the age of eighteen years who does not have a natural or legal guardian, a mental incompetent, or a person under any other legal disability.

The words "mental incompetent" appear nowhere else in section 13–80–105.

### A.

Because it is unclear from section 13–80–105, 6 C.R.S. (1985 Supp.), how a person under disability due to mental incompetency is to be treated for purposes of the two and three year periods applicable to medical malpractice claims, it is necessary to turn to section 13–81–103(1)(a), 6 C.R.S. (1973), which states, in pertinent part, as follows:

> (1) When in any of the statutes of the state of Colorado a limitation is fixed upon the time within which a right of action ... or any other right may be asserted either affirmatively or by way of defense, or an action ... based thereon may be brought, ... and the true owner of said right is a person under disability at the time such right accrues, then:
>
> (a) If such person under disability is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability, the applicable statute of limitations shall run against such person under disability in the same manner, for the same period, and with the same effect as it runs against persons not under disability. Such legal representative ... in any event shall be allowed not less than two years after his appointment within which to take action on behalf of such person under disability, even though the two-year period expires

6. Section 13–80–105(1) and (2), 6 C.R.S. (1985 Supp.), states:

(1) No person shall be permitted to maintain an action, whether such action sounds in tort or contract, to recover damages from a licensed or certified hospital, health care facility, dispensary, or other institution for the treatment or care of the sick or injured due to alleged negligence or breach of contract in providing care or lack of informed consent or from any person licensed in this state or any other state to practice medicine, chiropractic, nursing, physical therapy, podiatry, veterinary medicine, dentistry, pharmacy, optometry, or other healing arts on account of the alleged negligence, breach of contract, or lack of informed consent of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, promised, or agreed that he did possess and would exercise, unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto, subject to the following exceptions:

(a) If the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission, or, if such act or omission consisted of leaving an unauthorized foreign object in the body of the patient, then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission;

(b) If the action is brought by or in behalf of a minor who was under six years of age on the date of occurrence of the act or omission for which such action is brought, then such action may be instituted within two years after said minor reaches six years of age.

(2) The limitations period provided for in subsection (1) of this section shall not run during any period when the said minor is under the age of eighteen years and has no natural or legal guardian, but such action may be instituted by or in behalf of said minor within two years after a legal guardian is appointed by a court of record or within two years after the person under such disability reaches eighteen years of age, whichever shall occur first; except that, if there is a discovered act or omission which could give rise to an action, the limitations period shall not run unless a guardian ad litem is appointed to represent the minor child. Any real party in interest may apply to the court for the appointment of such guardian ad litem. A real party in interest shall include the party against whom such an action may be brought.

after the expiration of the period fixed by the applicable statute of limitations.

* * * * * *

(c) If the disability of any person is terminated before the expiration of the period of limitation in paragraph (a) of this subsection (1), and no legal representative has been appointed for him, then such person shall be allowed to take action within the period fixed by the applicable statute of limitations, or within two years after the removal of the disability, whichever period expires the later.

(2) After the expiration of the period fixed in paragraph (a) [or] (c) ... of subsection (1) of this section, neither the person under disability, nor his legal representative, nor anyone for him shall be permitted or allowed to take action based on any such right.[7]

This statute is intended to apply to any statute of limitations in this state, § 13–81–101(1), 6 C.R.S. (1973), unless there exists a special statute pertinent to the claim that conflicts with the general provisions of section 13–81–103.[8] No such conflict exists here, as section 13–80–105 is totally silent on the effect of mental incompetency on the two-year period of limitation and the three-year period of repose applicable to medical malpractice claims.

■ Although section 13–81–103(1)(a) speaks in terms of the running of the applicable statute of limitations against a person under disability represented by a "legal representative," and not in terms of suspending or tolling the limitation period during the period of disability, there can be no question that the statute is intended to toll the applicable statute of limitations during the period of disability. Otherwise there would be no purpose in setting forth the conditions for removing the disability, as section 13–81–103 clearly does. The provisions of section 13–81–103, therefore, operate to suspend the running of the applicable statute of limitations until either the disability is removed or, as expressly provided in subsection (1)(a), a "legal representative" is appointed for the "person under disability." *See Public Service Co. of Colorado v. Barnhill,* 690 P.2d 1248 (Colo. 1984); *Antonopoulos v. Telluride,* 187 Colo. 392, 532 P.2d 346 (1975); *Price v. Sommermeyer,* 41 Colo.App. 147, 584 P.2d 1220 (1975), *aff'd,* 198 Colo. 548, 603 P.2d 135 (1979). A "person under disability" is defined in section 13–81–101(3), 6 C.R.S. (1985 Supp.), to include a "mental incompetent," thus duplicating in this respect the definition of a "person under disability" in section 13–80–105(3) of the medical malpractice statute of limitations and repose. A "legal representative" is a "guardian, conservator, executor, or administrator duly appointed by a court having jurisdiction of any person under disability or his estate." § 13–81–101(2), 6 C.R.S. (1973).

■ We are also satisfied that the tolling provisions of section 13–81–103(1)(a) with respect to claims by or on behalf of a "person under disability" apply equally to the three-year period of repose applicable to a medical malpractice claim. Section 13–81–103(1)(a) is plainly directed to any statute that fixes a limitation "upon the time within which a right of action ... or any other right may be asserted either affirmatively or by way of defense." This all-encompassing language clearly applies to a statutory period of repose, which, by

---

7. Subsection (1)(b) of section 13–81–103, 6 C.R.S. (1973), is not relevant to the issue raised here. That section states that if the person under disability dies before the termination of his disability and before the expiration of the period of limitation in paragraph (a) of subsection (1), and the right is one which survives to the executor or administrator of the decedent, then the executor or administrator shall take action within one year after the death of the person under disability.

8. Section 2–4–205, 1B C.R.S. (1980) states:

If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

definition, limits the time within which a cause of action must be instituted regardless of whether the cause of action has yet accrued. *Yarbro v. Hilton Hotel Corp.*, 655 P.2d 822, 825 (1983). When the language of a statute is plain and its meaning clear, it should be interpreted as written. *Civil Service Employees Association v. Love*, 167 Colo. 436, 448 P.2d 624 (1968).

Construing section 13–81–103(1)(a) to apply to the three-year period of repose for medical malpractice claims is especially appropriate when the time frames and exceptions established by the medical malpractice statute are considered. As noted above, section 13–80–105(1), 6 C.R.S. (1985 Supp.), excepts from the three-year period of repose those medical malpractice claims based on knowing concealment and the leaving of an unauthorized foreign object in the patient's body, in which event the action must be instituted within two years after the act or omission was discovered or should have been discovered, and a medical malpractice claim on behalf of a minor who was under six years of age when the act or omission occurred, in which event the action may be instituted within two years after the minor reaches six years of age. Section 13–80–105(2), 6 C.R.S. (1985 Supp.), also tolls the two-year limitation period in the case of a minor under eighteen years of age who has no natural or legal guardian, and permits the action to be brought within two years after a legal guardian is appointed or after the minor reaches eighteen years of age. In light of the fact that section 13–80–105 provides such exceptions to the three-year statute of repose and the two-year statute of limitations, and further because the statute defines a "person under disability" to include a "mental incompetent," we are satisfied that the legislature could not have intended that the mere running of a three-year period following the act or omission that gave rise to a medical malpractice claim in favor of a mental incompetent would constitute an absolute and unconditional bar to the filing of an action by or on behalf of the mental incompetent.

It is presumed that the legislature, in enacting a statute, intends the entire statutory scheme to be effective. § 2–4–201(1)(b), 1B C.R.S. (1980). If the medical malpractice statute were to be construed to impose an absolute and unconditional three-year period of repose on a medical malpractice claim brought by or on behalf of a mental incompetent, the legislative decision to include a "mental incompetent" within the statutory definition of a "person under disability" in section 13–80–105(3) would be a legislative anomaly without any effect whatever. It must also be presumed that the legislature, in enacting a statute, intends a just and reasonable result. § 2–4–201(1)(c), 1B C.R.S. (1980). If we were to read the tolling provisions of section 13–80–105(3) relating to a "person under disability" as inapplicable to the three-year period of repose for medical malpractice claims, the net effect would be to deprive those persons of the tolling provision who, precisely because of their mental incompetency, are often least able to make informed decisions with respect to their legal interests and are frequently bereft of the support and guidance usually available to a person under some other legal disability, such as a minor. We therefore hold that the tolling provisions of section 13–81–103(1)(a) apply to both the limitation and the repose periods applicable to medical malpractice claims.

### B.

Because neither the general tolling provisions of section 13–81–103, 6 C.R.S. (1973), nor the provisions of the medical malpractice statute of limitations and repose, § 13–80–105, 6 C.R.S. (1985 Supp.), provide any further explication of "mental incompetent," we must look elsewhere for the legal meaning of that term. Section 27–10.5–135(1), 11 C.R.S. (1985 Supp.), states, as pertinent here, that whenever the term "mental incompetent" is used in the laws of the state of Colorado, it shall refer to the "mentally ill or gravely disabled, as defined in section 27–10–102, or a person with developmental disabilities, as defined in section 27–10.5–102, as the context of

the particular law requires."[9] Section 27–10–102(7), 11 C.R.S. (1985 Supp.), defines a "mentally ill person" as "a person with a substantial disorder of the cognitive, volitional, or emotional processes that grossly impairs judgment or capacity to recognize reality or to control behavior" and further states that "mental retardation is insufficient to either justify or exclude a finding of mental illness." Section 27–10–102(5), 11 C.R.S. (1982), defines "gravely disabled" as:

a condition in which a person, as a result of mental illness, is unable to take care of his basic personal needs or is making irrational or grossly irresponsible decisions concerning his person and lacks the capacity to understand this is so. A person of any age may be "gravely disabled" under this definition, but the term does not include mentally retarded persons by reason of such retardation alone.

Section 27–10.5–102(10)(a), 11 C.R.S. (1985 Supp.), defines a "developmental disability" as:

a disability that is manifested before the person reaches twenty-two years of age; constitutes a substantial handicap to the affected individual; and is attributable to mental retardation or related conditions which include cerebral palsy, epilepsy, autism or other neurological conditions when such conditions result in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons.

■ It is in light of the aforementioned statutory scheme that we must determine whether the record before us raises a genuine issue of material fact as to whether Southard was a "person under disability" as that term is used in section 13–81–103(1)(a), 6 C.R.S. (1973), so as to suspend the running of the two-year period of limitation and the three-year period of repose otherwise applicable to his medical malpractice claim against Dr. Miles.[10] It is to that question that we now turn.

9. The full text of section 27–10.5–135(1), 11 C.R.S. (1985 Supp.), reads:

Whenever the terms "insane", "insanity", "mentally or mental incompetent", "mental incompetency", or "of unsound mind" are used in the laws of the state of Colorado, they shall be deemed to refer to the insane, as defined in section 16–8–101, C.R.S., mentally ill or gravely disabled, as defined in section 27–10–102, or person with developmental disabilities, as defined in section 27–10.5–102, as the context of the particular law requires.

Since section 16–8–101(1), 8 C.R.S. (1985 Supp.), refers to the definition of insanity as a defense to a criminal charge, it is clearly inapplicable to this proceeding.

10. Section 13–80–116, 6 C.R.S. (1985 Supp.), also operates to toll the statute of limitations for certain persons. It states:

Except as provided in section 13–80–105, if any person entitled to bring any action mentioned in this article is under the age of eighteen years, insane, imprisoned, or absent from the United States at the time the cause of action accrues, such person may bring said action within the time in this article respectively limited after the disability is removed. A claim for injury shall be considered to accrue on the date the injury is known or should have been known by the exercise of reasonable diligence.

Because there is no evidence or even allegation that Southard is within any of the four categories of disability (e.g., under eighteen years of age, insane, imprisoned, or absent from the country), listed in section 13–80–116, the tolling provisions of that statute are not applicable here. We note, however, that section 13–80–116 excepts section 13–80–105, 6 C.R.S. (1985 Supp.), the medical malpractice statute, from its operation. Section 13–80–116 lends itself to two interpretations with respect to medical malpractice claims: (1) that section 13–80–116 does not apply at all to cases involving medical malpractice; or (2) that section 13–80–116 applies to persons about whom section 13–80–105 is silent, in which case a person who did not fit one of the specific exceptions to section 13–80–105 could still fit into section 13–80–116 and be entitled to take advantage of the tolling provisions of that statute. We believe the legislature intended the latter interpretation. Under Colorado law, where a statute is in potential conflict with another statute, it should be interpreted, if possible, in a manner that gives effect to both statutes. E.g., People v. James, 178 Colo. 401, 497 P.2d 1256 (1972). It would make little sense to except a "person under disability" from the limitation and repose periods applicable to medical malpractice claims, as section 13–80–105 does, and then remove such exceptions in section 13–80–116. Thus, we believe that the legislature intended section 13–80–116 and section 13–80–105 to be read in harmony with each other, with the result that section 13–80–116 applies to those cases involving medical malpractice which were not specifically provided for by section 13–80–105.

## IV.

As noted above, pursuant to section 13–81–103(1)(a), 6 C.R.S. (1973), the applicable statutory periods of limitation and repose run against a "person under disability in the same manner, for the same period, and with the same effect as [they run] against persons not under disability" if the person under disability "is represented by a legal representative at the time the right accrues, or if a legal representative is appointed for such person under disability at any time after the right accrues and prior to the termination of such disability." "A legal representative," as pertinent here, would include a guardian duly appointed by a court having jurisdiction of a "person under disability." § 13–81–101(2), 6 C.R.S. (1973). There is not even a suggestion in the record before us that a legal representative was appointed for Southard at any time prior to the filing of his claim against Dr. Miles on August 20, 1981. The fact that Southard's parents were obviously concerned about his condition is of no legal significance to the tolling issue raised here. Although Southard's parents ultimately joined the pending litigation as next friends of their son, a next friend of a person under disability is not a "legal representative" as that term is defined in section 13–81–101(2), 6 C.R.S. (1973). As is clear from our decision in *Antonopoulos*, 187 Colo. at 399, 532 P.2d at 350, a next friend merely serves as an aid to the assertion of those rights which a person under disability has against another party and, as such, the next friend's action or inaction in commencing the suit cannot prejudice those rights. *See also Price*, 41 Colo.App. 147, 584 P.2d 1220, *aff'd*, 198 Colo. 548, 603 P.2d 135. Nor, given the statutory definition of "legal representative" in section 13–81–101(2), do Southard's attorneys fit into that category. If indeed, therefore, there is a genuine factual issue concerning Southard's status as a "person under disability,"

then neither the consultation by Southard's parents with an attorney in April 1979 nor the attorney's filing of the initial complaint in October 1979 served to exempt Southard's claim against Dr. Miles from the tolling provision of section 13–81–103(1)(a), 6 C.R.S. (1973).[11]

These matters aside, we are satisfied that the record before us raises a genuine issue of fact concerning Southard's status as a "person under disability" within the contemplation of section 13–81–103(1)(a), 6 C.R.S. (1973). The affidavits of the neurologist, cardiologist, internist, and rehabilitation specialist, submitted on Southard's behalf at the summary judgment hearing, clearly indicate that Southard's mental condition has substantially deteriorated since September 12, 1976, so as to raise serious factual questions as to whether he is now and has been since that date a "mentally ill person" as defined by section 27–10–102(7), 11 C.R.S. (1985 Supp.), "gravely disabled" within the meaning of section 27–10–102(5), 11 C.R.S. (1982), or "developmentally disabled" pursuant to section 27–10.5–102(10)(a), 11 C.R.S. (1985 Supp.). A determination that Southard has been rendered "mentally ill," "gravely disabled," or "developmentally disabled" as a result of cardio-respiratory arrest on September 12, 1976, would place him within the category of a "mental incompetent" as that term is used in section 13–81–101(3), 6 C.R.S. (1985 Supp.), thus rendering him a "person under disability" within the intendment of section 13–81–103(1)(a), 6 C.R.S. (1973), with the result that his claim against Dr. Miles would not be subject to either the two-year limitation period or the three-year period of repose in section 13–80–105(1), 6 C.R.S. (1985 Supp.). That the affidavits submitted on Southard's behalf, in opposition to Dr. Miles's motion for summary judgment, might arguably be controverted by other deposition testimony, as Dr. Miles argued at the summary judg-

11. In view of the serious question raised in this case concerning Southard's mental competency, we believe that it would be appropriate for the district court on remand of this case to consider either directing Southard's next friends to peti-tion for the appointment of a guardian pursuant to section 15–14–301, 6 C.R.S. (1973), or, in the alternative, appointing a guardian ad litem for Southard as provided in C.R.C.P. 17(c).

ment hearing, merely points up the inappropriateness of resolving the factual issues relating to Southard's mental status within the format of a summary judgment proceeding.

The judgment of the district court is accordingly reversed, and the case is remanded to that court with directions to reinstate Southard's claim against Dr. Miles.

DUBOFSKY, J., does not participate.