**Zeke WILLIAMS, Plaintiff,**

v.

**WHITE MOUNTAIN CONSTRUCTION COMPANY, INC., a Colorado corporation, and Lloyd Rogers, Defendants, Third–Party Plaintiffs–Appellants,**

v.

**PERMANENT BUILDERS, INC., a Colorado corporation, Third–Party Defendant–Appellee.**

**No. 86SA100.**

Supreme Court of Colorado,
En Banc.

Feb. 1, 1988.

Elder, Phillips, Daniel, Phillips & Boughton, W. Bruce Phillips, Keith Boughton, Grand Junction, for defendants, third-party plaintiffs-appellants.

Hugh D. Wise, Grand Junction, for third-party defendant-appellee.

VOLLACK, Justice.

Defendants, third-party plaintiffs-appellants White Mountain Construction Co. and Lloyd Rogers (collectively White Mountain), appeal directly from the Pitkin County District Court order granting summary judgment in favor of Permanent Builders, Inc. (Permanent Builders).[1] We affirm.

## I.

In the fall of 1981, Permanent Builders subcontracted with White Mountain to dig a trench and install water pipes on Aspen Mountain. White Mountain dug the trench according to the express instructions of Frank Wright, a construction superintendent for Permanent Builders. When advised by White Mountain of the potential hazards of digging the trench in accordance with his instructions, Frank Wright said, "Don't worry about it—we will take care of it if anything happens." On October 7, 1981, Zeke Williams, an employee of Permanent Builders, was seriously injured when the trench collapsed. After the accident, White Mountain again contacted Frank Wright, who made reassurances that Permanent Builders would take care of any problems concerning Williams.

Williams received workmen's compensation benefits which precluded a tort action against Permanent Builders.[2] He also filed suit in Pitkin County District Court against White Mountain, alleging that his injuries were caused by White Mountain's negligence.

White Mountain then filed a third-party complaint against Permanent Builders. It claimed that an oral contract of indemnity arose by virtue of Frank Wright's statements. Alternatively, White Mountain claimed that it was entitled to contribution from Permanent Builders. Permanent Builders filed a motion for summary judgment and entered into a stipulation of facts with White Mountain for that purpose.[3]

Based on these stipulated facts, the trial court found that no contract of indemnity was created and that, as a matter of law, White Mountain's claim of contribution was barred by section 8–42–102, 3B C.R.S. (1986), of the Colorado Workmen's Compensation Act (the Compensation Act). Williams later recovered a jury verdict of $574,586.

White Mountain contends here that (1) the trial court erred in refusing to find that an oral contract of indemnity was created; (2) the Compensation Act does not prohibit White Mountain from claiming contribution from Permanent Builders under the Uniform Contribution Among Tortfeasors Act (the Contribution Act), §§ 13–50.5–101 to –106, 6A C.R.S. (1987); and (3) to the extent that the Compensation Act prohibits third-party claims for indemnity or contribution against a negligent employer, it vio-

1. White Mountain appeals directly to this court pursuant to section 13–4–102(b), 6A C.R.S. (1987) by challenging the constitutionality of the Compensation Act.

2. The parties stipulate that Permanent Builders at the time of the accident was an employer in compliance with section 8–42–102 of the Compensation Act.

3. The parties agreed to the following stipulation:
 1. At the time of his injury, Plaintiff was an employee of Permanent Builders, Inc.. [sic]
 2. Permanent Builders was a complying employer under Section 8–42–102, C.R.S.
 3. Lloyd Rogers was an employee of White Mountain.
 4. In the fall of 1981, White Mountain Construction Company was hired by Permanent Builders to dig a trench on Aspen Mountain near Aspen, Colorado, for installation of water and water drain pipe.
 5. On October 7, 1981, White Mountain Construction Company was working under the direction of Frank Wright of Permanent Builders, Inc.
 6. The trench which eventually collapsed causing the injury to Plaintiff Zeke Williams was dug in accordance with the express instructions of Frank Wright.
 7. When advised of the potential hazards of digging the trench in accordance with Frank Wright's instructions, Frank Wright advised, "Don't worry about it—we will take care of it if anything happens."
 8. After Plaintiff's injury, Scott Barton, manager of White Mountain, again contacted Frank Wright and was again assured that Permanent Builders would take care of any problems.
 9. Based on these assurances, White Mountain believes an agreement for indemnification was reached and work was performed on the Aspen Mountain Project in reliance on these assurances of indemnification.

lates the Colorado and United States Constitutions' guarantees of due process and equal protection of the law.

## II.

White Mountain first contends that Frank Wright's statement before the accident, "Don't worry about it—we will take care of it if anything happens," when understood in context, together with his reassurance after the accident that Permanent Builders would take care of any problems, was sufficient to create an oral contract indemnifying White Mountain from its own negligence. We do not agree.

■■■ Like other contracts, indemnity contracts can arise orally. *See Chicago, M., St. P. & Pac. R.R. Co. v. Famous Brands, Inc.*, 324 F.2d 137 (8th Cir.1963). The word "indemnity" is not required, *Westinghouse Elec. Corp. v. Turnberry Corp.*, 423 So.2d 407 (Fla.Dist.Ct.App. 1982), *pet. for review denied*, 434 So.2d 889 (Fla.1983), and its presence does not guarantee that an indemnity contract was created. *Batson–Cook Co. v. Industrial Steel Erectors*, 257 F.2d 410, 412 (5th Cir. 1958). While such contracts are generally construed to effectuate rather than defeat the parties' intentions, *Gardner Bros. & Glenn Constr. Co. v. American Surety Co.*, 95 Colo. 456, 460, 37 P.2d 384, 386 (1934), indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect. *Zimmerman v. Baca*, 346 F.Supp. 172, 178 (D.Colo.1972). Ambiguities will be resolved against the party seeking indemnity. *Lackie v. Niagara Mach. & Tool Works*, 559 F.Supp. 377, 380 (E.D.Penn.1983).

■ In *Batson–Cook*, the fifth circuit held that a contract purporting to indemnify a general contractor against all losses "sustained in connection with or to have arisen out of or resulting from the performance of the work by subcontractor" was not sufficiently specific and unambiguous to impose liability. There the court noted:

The phrase stressed heavily is indeed broad. But the broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit....

257 F.2d at 413. This reasoning applies with greater force when the statement is not only broad but ambiguous.

Applying these rules, the stipulated facts establish that Frank Wright's statement was ambiguous. The statement arose while he and a White Mountain employee were discussing the hazards of digging the trench in the manner proposed by Frank Wright. Such a discussion might prompt a subcontractor to be concerned not only with the possibility of tort liability as a result of following an unorthodox excavation procedure but also with vicarious liability, *see Jacobson v. Doan*, 136 Colo. 496, 319 P.2d 975 (1957) (loaned servant doctrine makes subcontractor liable for torts of employee), and the concomitant responsibility under the Compensation Act to make workmen's compensation payments as an employer. While it is perhaps more plausible that "it" in the statement "Don't worry about *it*—we'll take care of *it* if anything happens" refers to the first possible concern, it is also plausible that "it" refers to the second set of concerns, or to some other concern known only to the parties. We are mindful that it is inappropriate to construe statements so narrowly as to deprive them of any meaning, yet the burden of indemnity is so onerous that we hesitate to impose it unless the language used clearly requires such a result. For the same reasons, the reassurance given by Frank Wright after the injury fails to buttress White Mountain's argument. Resolving these ambiguities against a finding of indemnity, we conclude that the district court correctly found that no express contract of indemnity arose between White Mountain and Permanent Builders.[4] *See Greer v.*

---

4. Because we hold that no indemnity contract

was created, we express no opinion whether the

*Services Equip. & Eng'g, Inc.*, 593 F.Supp. 1075 (E.D.Tex.1984); *Price v. Amoco Oil Co.*, 524 F.Supp. 364, 369 (S.D.Ind.1981); *Crum v. Colman–Cocker Textile Machinery*, 467 F.Supp. 6, 7 (E.D.Tenn.1978).

### III.

 White Mountain advances three arguments supporting its claim that the district court erred in failing to recognize a right to contribution from Permanent Builders for its proportionate liability in the injury to Williams. It maintains first that the primary purpose of the Compensation Act would not be defeated by a judicial interpretation permitting third parties to recover contribution from a negligent employer. White Mountain further claims that such a decision would avoid the unjust result of requiring one tortfeasor to shoulder disproportionate liability because of the fortuity that the other tortfeasor is statutorily immune. White Mountain finally argues that third parties received no benefit under the Compensation Act and should therefore not be burdened by it. Permanent Builders argues that the Contribution Act cannot apply to negligent employers because the exclusive remedy provision of the Compensation Act prohibits employers from being tortiously liable for injuries to their employees. We are persuaded that the rule that best incorporates the design of the legislature and fairness to the parties is one denying all claims of contribution from employers who comply with the Compensation Act.

### A.

Whether a third-party tortfeasor sued by an injured employee can recover contribution from a negligent employer who has complied with state workmen's compensation procedures has aptly been called perhaps the most evenly balanced controversy in all of compensation law. 2 A. Larson, *The Law of Workmen's Compensation*

Compensation Act prohibits the operation of a valid contract of indemnity between an employer and a third-party defendant. *See Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1298 n. 6 (Colo. 1986). We do note that prior to 1977, when the Contribution Act went into effect, employers

§ 76.11, at 14–561 (1987). As we noted in another context:

[T]here are conflicting policy considerations involved. It is undoubtedly true that the legislature has altered traditional theories of loss allocation in tort with the passage of the Uniform Contribution Among Tortfeasors Act, 13–50.5–101 to –106, C.R.S. 1973 (1980 Supp.) and with the introduction of a comparative negligence scheme into Colorado law. Section 13–21–111, C.R.S. 1973. The ability of a jury to apportion fault on a percentage basis among plaintiffs and joint tortfeasors alike is now accepted. We also recognize that among joint tortfeasors there is a right of contribution, again according to the relative degree of fault of each. Section 13–50.5–103, C.R.S. 1973 (1980 Supp.).

*Public Serv. Co. v. District Court*, 638 P.2d 772, 777 (Colo.1981) (denial of motion to file third-party complaint alleging indemnity or contribution was not an abuse of discretion).

The statutory scheme in Colorado closely resembles those in other states. Section 8–42–102, 3B C.R.S. (1986), the exclusive remedy provision of Colorado's Compensation Act, provides:

An employer who has complied with the provisions of articles 40 to 54 of this title, ... shall not be subject to the provisions of section 8–42–101; nor shall such employer ... be subject to any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

who complied with the Compensation Act were immune from third-party claims of indemnification. *Holly Sugar Corp. v. Union Supply Co.*, 194 Colo. 316, 572 P.2d 148 (1977); *Hilzer v. MacDonald*, 169 Colo. 230, 454 P.2d 928 (1969).

The Contribution Act, enacted in 1977, permits one tortfeasor to recover contribution "where two or more persons become jointly or severally liable in tort for the same injury to person or property." § 13–50.5–102(1), 6A C.R.S. (1987). The problem is that a plain reading of the two statutes together does not reveal whether the legislature intended the subsequently adopted Contribution Act to abrogate the exclusive remedy provision of the Compensation Act, thereby permitting third-party claims of contribution from negligent employers. In states with statutory schemes similar to that of Colorado, the majority rule is to prohibit such claims.[5] This rule fulfills the twin public policy goals of speedy, predictable determination of job-related injuries and a reluctance to create a judicial remedy that invades the province of the legislature.

### B.

The Compensation Act, when read together with the Contribution Act, does not make it clear that the statutory immunity that employers enjoy under the Compensation Act extends to claims for contribution as a result of injury to employees. In the face of statutory silence, questions of interpretation are governed by legislative intent. *Johnston v. City Council*, 177 Colo. 223, 493 P.2d 651 (1972).

The interpretation urged by White Mountain would frustrate some of the policy concerns that underlie the Compensation Act. It is true that the primary purpose of the Compensation Act is to compensate workers for job-related injuries, *Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973), and that permitting contribution would not necessarily impede

that goal. Yet other concerns are implicated. Questions of employee negligence or employer care are rendered legally irrelevant by the Compensation Act. *Id.* at 36, 510 P.2d at 893. Speedy resolution of job-related claims is another purpose. *Stanley Hotel v. Thomas*, 153 Colo. 503, 506, 387 P.2d 27, 29 (1963). The Compensation Act is meant to be the exclusive measure of employer liability. *O'Quinn v. Walt Disney Prod., Inc.*, 177 Colo. 190, 493 P.2d 344 (1972); § 8–42–102, 3B C.R.S. (1987). Finally, the Compensation Act is to be liberally construed so as to accomplish these purposes. *James v. Irrigation Motor & Pump Co.*, 180 Colo. 195, 503 P.2d 1025 (1972).

If we were to permit White Mountain to bring a third-party claim for contribution, then Permanent Builders would be forced to litigate the issues of employee negligence or its own due care. This would reinsert issues which the legislature removed when it enacted the Compensation Act, and undermine the express policy of exclusivity upon which so much of the Compensation Act is based. The legislature was presumably aware of the exclusive remedy provision of the Compensation Act when it adopted the Contribution Act. *See Smith v. Miller*, 153 Colo. 35, 39, 384 P.2d 738, 740 (1963). Therefore, because the Contribution Act demonstrates no intent to abrogate or even alter the allocation of risk assigned to employers in the Compensation Act, we conclude that the Compensation Act remains the exclusive forum for deciding employer liability for job-related injuries.

White Mountain urges us to recognize that prohibiting contribution claims would

---

5. In addition to federal courts, *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), thirty-four states have adopted this view. *See* 2 A. Larson, The Law of Workmen's Compensation § 76.20, at 14–571 n. 24; *see also* Annotation, *Modern Status of Effect of State Workmen's Compensation Act on Right of Third–Person Tortfeasor to Contribution or Indemnity from Employer of Injured or Killed Workman*, 100 A.L.R.3d 350, 356–64 (1980).

A few states permit such claims without limiting the amount that can be recovered. *See*

*Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972).

A third approach permits such claims but limits the proportional recovery of the tortfeasor to the employer's share of workmen's compensation benefits paid to the injured employee. *Burrell v. Electric Plant Bd.*, 676 S.W.2d 231 (Ky.1984); *Johnson v. Raske Bldg. Systems, Inc.*, 276 N.W.2d 79 (Minn.1979); *Raisler v. Burlington N. R.R. Co.*, 717 P.2d 535 (Mont.1985).

cause tortfeasors to shoulder a disproportionate share of liability. In light of the recent abolition of joint and several liability, we cannot agree. Section 13–21–111.5(1), 6A C.R.S. (1987), enacted in 1986, provides:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

Tortfeasors sued by injured employees are now able to present evidence of employer liability at trial so as to reduce whatever damages may be assessed against them to a level proportionate to their liability. The problem of one tortfeasor bearing disproportionate liability has now been eliminated without requiring contribution from negligent employers.

White Mountain's final argument in favor of recognizing a right to contribution from Permanent Builders is an equitable one: whereas employers gained statutory immunity from tortious liability when they lost the right under the Compensation Act to prove employee negligence, third parties gained nothing when they lost the right to prove employer negligence. Because White Mountain is denied any benefit under the Compensation Act, goes the argument, it should not in fairness be required to bear the burden of being denied a chance to prove that Permanent Builders was at least partially at fault for the injury to Williams. This argument is historically inaccurate. At the time the Compensation Act was promulgated, Colorado did not recognize a common law right to contribution from any joint tortfeasor; that right was created when the Contribution Act was passed. *Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1297 (Colo.1986). By contrast, employers did have a right to prove employee negligence before the Compensation Act was passed. Relying on the general rule that statutes should be understood in light of conditions at the time of their enactment, it is not unfair to impose on

third parties the burden of being denied a right to contribution because no right previously existed. *See* Larson, *Workmen's Compensation: Third Party's Action Over Against Employer*, 65 Nw.U.L.Rev. 351, 420 (1970).

We conclude that the district court was correct in denying White Mountain's claim of contribution.

### IV.

White Mountain next claims that the Compensation Act is unconstitutional. Specifically, it claims that denying contribution violates the due process and equal protection clause of the United States Constitution as well as art. II, section 6 of the Colorado Constitution. We do not agree.

### A.

■■■ The due process clause of the fifth amendment as applied to Colorado through the fourteenth amendment protects the individual from invasions by the state of life, liberty or property. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *See also* Colo. Const. art. II, § 25. Property rights are at issue here, but only those rights which have already accrued as a result of state law or existing rules are protected. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). As we noted, the right to contribution did not exist at common law, *Brochner v. Western Ins. Co.*, 724 P.2d 1293 (Colo.1986), and under the rule announced today, the Contribution Act did not create a right to contribution from employers who complied with the Compensation Act. Since no right to contribution had accrued, White Mountain has no property interest upon which to ground a due process claim.

For the same reason, White Mountain's claim under art. II, section 6 of the Colorado Constitution is similarly constrained. Article II, section 6, the equality of justice clause, requires courts to be open to every person and to afford a speedy remedy for every injury to person, property or character. As we have interpreted this clause, courts are required to consider only those

rights which accrue under the law. *O'Quinn v. Walt Disney Prods., Inc.,* 177 Colo. 190, 195, 493 P.2d 344, 346 (1972). Because no such right has accrued, there is no breach of a legal duty or infringement of a legal right, and the equality of justice clause is not violated. *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967); *Vogts v. Guerrette,* 142 Colo. 527, 351 P.2d 851 (1960).

### B.

White Mountain also claims that the exclusive remedy provision of the Compensation Act violates the equal protection clause of the United States and Colorado Constitutions. Statutes are presumed to be constitutional, and the plaintiff has the burden of showing unconstitutionality beyond a reasonable doubt. *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 824–25 (Colo.1983). In order to establish that the Compensation Act violates the equal protection clause, the plaintiff must show that the Act is not rationally related to a legitimate state purpose. *San Antonio Indep. School Dist. v. Rodriquez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Bellendir v. Kezer,* 648 P.2d 645, 646 (Colo.1982). Here the legitimate purpose is a comprehensive and predictable scheme that speedily resolves questions of job-related injuries and fixes employer liability in a way that allows employers to obtain insurance. That predictability is furthered by the exclusive remedy provision of the Compensation Act, which prevents employers from facing indirect tort liability in addition to direct liability for workmen's compensation payments. As we noted in *Bellendir:*

> The formula allows all parties involved to determine with some degree of certainty the amount of compensation to which the worker is entitled. Not only does this certainty aid the parties in reaching prompt agreement on compensation issues, it also aids the state insurance compensation fund and other insurors in setting employer premiums.

*Id.* at 647.

Because the statutory scheme furthers these legitimate objectives, we conclude that the exclusive provision of the Compensation Act does not deny White Mountain the equal protection of the law.

Accordingly, we affirm.

MULLARKEY, J., concurs in part and dissents in part.

LOHR, J., joins in the concurrence and dissent.

ROVIRA, J., does not participate.

MULLARKEY, Justice, concurring in part and dissenting in part:

I agree with the holdings of sections III and IV of the majority opinion that White Mountain had no right to contribution from Permanent Builders and that the Compensation Act is constitutional. I therefore join in the majority opinion as it relates to those matters. However, I cannot agree that summary judgment should have been granted on the issue of whether an oral contract of indemnity was created and therefore dissent from section II of the majority opinion.

This case is before us on review of the district court's order granting a motion for summary judgment filed by Permanent Builders, the third-party defendant. White Mountain contested this motion, although it did enter into a stipulation of facts.

Summary judgment is a drastic remedy. *E.g., Southard ex rel. Southard v. Miles,* 714 P.2d 891 (Colo.1986); *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769 (Colo.), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978). Summary judgment should not be granted where there appears to be any controversy concerning material facts. *E.g., Blue Cross v. Bukulmez,* 736 P.2d 834 (Colo.1987); *KN Energy, Inc.,* 698 P.2d 769; *Ginter,* 585 P.2d 583. All doubts as to the presence of disputed facts must be resolved against the moving party which, in this case, was Permanent Builders. *E.g., KN Energy, Inc.,* 698 P.2d 769; *Ginter,* 585 P.2d 583. As we stated in *Southard,* "summary judgment should be granted only when the moving party demon-

strates the existence of both the evidentiary and legal predicates for its entry." 714 P.2d at 895.

Although the parties stipulated to certain facts for the purpose of the summary judgment motion, the factual setting of this case is anything but clear. The majority concedes that Frank Wright's statement, "Don't worry about it—we will take care of it if anything happens," was ambiguous. At 426. The majority then lists several possible interpretations of this statement, including that it could have referred to "some other concern known only to the parties." At 426.

The stipulation is ambiguous or incomplete in at least one other important respect. In paragraph 8, the parties stipulated that Scott Barton of White Mountain contacted Wright after the plaintiff's injury and Wright stated that "Permanent Builders would take care of any problems." The phrase "any problems" is out of context and ambiguous. We are not informed what Barton said and we do not know if, for example, Barton and Wright discussed the plaintiff's injuries and the two companies' potential liability to the plaintiff. All we know is that the conversation took place after the plaintiff was injured. The majority also concedes that this statement was ambiguous. At 427.

Even if some facts are stipulated, a trial court must deny a motion for summary judgment if the stipulation is equivocal or if a genuine issue of material fact remains in dispute despite the stipulation. *Counsel for the Hearing Impaired v. Ambach*, 610 F.Supp. 1051 (E.D.N.Y.1985); 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2724, at 75 (1983); *see, e.g., Williams v. Chick*, 373 F.2d 330 (8th Cir.1967); *Bank of America Nat. Trust and Sav. Ass'n. v. United States*, 317 F.2d 859 (9th Cir.1963). Plainly, that is the situation presented by this case. We cannot determine from this stipulation whether an oral contract of indemnity was created, and I would reverse the decision of the trial court granting summary judgment on this issue.

I am authorized to say that Justice LOHR joins in this concurrence and dissent.