CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Appellant,

v.

FAMOUS BRANDS, INC., Appellee.

No. 17264.

United States Court of Appeals
Eighth Circuit.

Nov. 14, 1963.

138

Gene F. Bennett, Minneapolis, Minn., for appellant; Rider, Bennett, Egan & Johnson, Minneapolis, Minn., and E. O. Schiewe and R. K. Merrill, Chicago, Ill., on the brief.

Clyde F. Anderson (of Meagher, Geer, Markham & Anderson), Minneapolis, Minn., for appellee; O. C. Adamson, II and Mary Jeanne Coyne, Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and MICKELSON, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff railroad from final judgment dismissing its complaint wherein it sought contractual indemnity from Famous Brands, Inc., defendant, for $56,972.95 paid by plaintiff in settlement of a Federal Employers Liability Act claim of Lloyd J. Enger. Like counsel, we will refer to the parties as plaintiff and defendant.

Plaintiff provides railway service to defendant via a spur track pursuant to a private contract which contains the indemnity provisions upon which this action is based. This track, described in the record as a spur track, runs approximately parallel to defendant's building in Minneapolis, Minnesota, at a distance of between 6.35 and 6.45 feet north of said building and serves the defendant and a neighboring business. To the north of the spur track is a track referred to in the record as the new track.[1] Such tracks will be referred to in this opinion as the spur track and the new track. The distance between the center

---

1. Such name is somewhat unrealistic as the track has been in existence since 1906. The new track is also described as Badger Industrial Spur and main lead track.

of the spur track and the center of the new track is 12 feet. The new track is a main lead track controlled exclusively by the plaintiff and is used to service numerous industries in the area.

Mr. Enger, serving on a switching crew moving cars westward on the new track just prior to the accident which occurred about 2:30 a. m. on April 8, 1959, was riding on the south side of a box car with his feet in the bottom stirrup as such moving car approached a refrigerator car spotted on the spur track opposite defendant's building for defendant's use. Normally there is sufficient room (about 18 inches) for a switchman in Enger's position on the south side of the car on the new track to pass safely by cars standing on the spur track. At the time of the accident, the doors of the refrigerator car on the spur track had been left open [2] leaving inadequate space between the moving car on the new track and the spotted car on the spur track for Mr. Enger to safely pass.

Mr. Enger, upon suddenly discovering this situation, was forced to jump to the ground thereby sustaining the serious injuries for which the railroad has compensated him. The amount of damages is not here in dispute.

Plaintiff's action is based solely upon the indemnity provisions of the contract entered into between the plaintiff and defendant with relation to the spur track on March 1, 1944.[3]

The contract provides for car load pickup and delivery service for defendant on the spur track and provides for the expense of maintaining the track and for other matters not here material. The portion of the contract material to this action is Section 12 which deals with track clearances and indemnity. The first paragraph of Section 12 provides that with respect to the portion of the track opposite its property defendant "shall not place or permit to be placed, or to remain, any material, equipment, structure, pole or other obstacle or obstruction within 8.5 feet on straight track or 9.5 feet on curved track laterally of the center or within twenty-five (25) feet vertically from the top of either rail of said track."

The second paragraph of Section 12 relates to existing reduced clearances and reads:

"As between the Owner, the Tenant and the Railroad Company, it is mutually agreed that the existing horizontal clearances which are less than the minimum prescribed in preceding paragraph hereof with respect to that portion of the track "B"—"C", to the extent and in the location shown on the blueprint hereto attached, marked Exhibit "B" and hereby made a part hereof, may be permitted to remain for the time being, provided, however, that if at any time a change in such clearances is necessary to meet legal or operating requirements, the Tenant, or upon default of the Tenant, the Owner will, at its own expense, make such changes therein so as to conform with such requirements, and provided further, that so long as such reduced clearances are maintained, the Tenant, or upon default of the Tenant, the Owner shall indemnify and save the Railroad Company free and harmless from all damages, cost and expenses of every kind and nature, including personal injury to or death of persons resulting from said reduced clearances."

2. Plaintiff has not pleaded any cause of action based upon negligence. The trial court in its opinion properly observes: "The railroad company is not predicating its claim on any negligence of Famous Brands in leaving the doors of the refrigerator car in the position that they were at the time of the accident. There is no evidence as to who may have opened the doors or who left them open. The liability of Famous Brands, if any, according to the complaint, must be predicated exclusively upon Paragraph 12 of the contract."

3. There are other signers of this contract but it is undisputed that the plaintiff and defendant are bound by the terms of the contract.

Judge Nordbye, in a well-considered memorandum opinion (not reported) supplemented by findings of fact and conclusions of law, determined that the factual situation here presented is not covered by the indemnity agreement and entered judgment dismissing the complaint.

Upon this appeal, defendant urges that the court erred in failing to construe the contract as providing plaintiff contractual indemnity against the consequences of the damages it was compelled to pay its employee Enger.

■ There is no question under Minnesota law with respect to the validity of an indemnity contract exempting a railroad from the consequences of its own negligence where, as here, the contract is private and not in fulfillment of a common carrier obligation. The parties so agree and are supported by Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. R., 8 Cir., 199 F.2d 725.

■ The parties also agree that under Minnesota law indemnity agreements should not be given "an unduly liberal or harshly strict, construction, but a fair construction that will accomplish its stated purpose." Northern Pac. Ry. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226.

■ The rules governing the requisites, validity and construction of contracts generally apply to indemnity contracts. Anthony v. Louisiana & Ark. Ry., 8 Cir., 316 F.2d 858, 863; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. R., supra.

■ The burden is upon one attacking the contract interpretation made by the trial court of an ambiguous contract to show that the interpretation made is irrational, illogical, unsound or contrary to local law applicable to the interpretation of indemnity contracts. Northern Natural Gas Co. v. Roth Packing Co., 8 Cir., 323 F.2d 922; American Indem. Co. v. Swartz, 8 Cir., 250 F.2d 532, 536.

■ Plaintiff urges that the court erred in failing to interpret the contract as providing indemnity against the consequences of the center of the spur track being only 12 feet distant from the center of the new track. Plaintiff contends such inadequate separation of the tracks is a violation of horizontal clearances existing at the time of contracting and is hence covered by the indemnity provisions of paragraph 2 of Section 12, wherein indemnity is provided for damages "resulting from such reduced clearances." In rejecting such contention, the trial court states:

"As stated, no reference whatsoever is made in Paragraph 12 to the restricted clearance which then existed between the spur track and the new track. The only restricted clearances that Paragraph 12 refers to is the existing horizontal clearances between the spur track and the building adjacent thereto. Necessarily, the parties intended that in the use of the spur track, the right of way owners would have to utilize cars of various widths on the spur track. That would be the normal use contemplated by the parties for whose benefit the trackage agreement was entered into. Surely, it was not intended by the parties that if plaintiff in the ordinary course of business placed a car of merchandise consigned to Famous Brands on the spur track adjacent to one of the loading doors, the defendant had violated its covenants in Paragraph 12. And although if some accident occurred by reason of the restricted clearance as between the car and Famous Brands building, the indemnity agreement might be a basis for liability of the defendant, there is not the slightest basis for plaintiff's contention that the indemnity agreement was to be extended to an accident which might occur by reason of the restricted clearance between the spur track and the new track. The fact that the word 'clearance' in the contract between the parties is used in the plural does not suggest that the

parties were referring to the statutory requirements as to distances between the spur track and the new track as well as to the specific clearances to which the paragraph refers. The impelling answer to plaintiff's claim is that this accident did not result from the reduced clearances which defendant was permitted to maintain as provided in Paragraph 12 of the agreement."

■ Plaintiff's reliance upon Minnesota Statutes § 219.46 to support its construction of the contract is misplaced. When the two tracks here involved were constructed in 1906, the 12 feet clearance between the centers of such tracks was lawful. In 1943 the Legislature provided that in the future parallel tracks should have a 14 foot clearance between center lines. As the trial court points out in its opinion, Subd. 4 of § 219.46 specifically permits continuance of existing clearances with respect to tracks previously lawfully constructed, unless the railroad commission, after hearing and finding that greater clearance can be reasonably provided, orders a change. There is no evidence that the commission had ordered any change. We find no support in the contract or the evidence for plaintiff's contention that the clearance between the tracks was considered by the contracting parties to be an existing violation of the clearances required by the contract.

The contract contains no express language branding the existing clearances between the two tracks as violative of the contractual provisions relating to obstructions. Obviously the unoccupied tracks constitute no violation of the clearance provisions. Clearance violations with respect to the spur track, if they existed at all, only occurred when plaintiff ran a train or placed cars upon the new track opposite defendant's premises. Defendant had no control over the use of the new track. All control over the use and operation of the new track rested solely in the plaintiff railroad.

Moreover, the contract deals exclusively with the spur track and contains no provision for clearance violations with respect to the new track. Here the accident was not caused by deficient clearances with respect to the use of the spur track, which is the only track the contractual clearance provisions were designed to protect.

■ We do not disagree with plaintiff's contention that paragraph 1 of Section 12 and the contract as a whole were designed to provide minimum clearance protection as to both sides of the spur track. Paragraph 1 provides that defendant shall not place or permit to be placed or remain any material, equipment, structure, pole or other obstacle or obstruction within 8.5 feet on straight track. Had the defendant erected a shed or a pole, or placed or permitted to be placed a substantial object within 8.5 feet of either side of the center of the track, the indemnity provision would be operative. The contract must be construed as a whole. Like the trial court, we believe that the indemnity provisions were to be operative only with respect to clearance violations constructed or permitted by the defendant and they were not intended to cover a moving object such as a train on the new track, the operation and control of which rested solely with the plaintiff. With respect to the claimed violation of paragraph 1 of Section 12, the court's finding is:

"It is clear that the defendant did not, after the agreement was entered into between the parties, place any 'material, equipment, structure, pole or other obstacle or obstruction within 8.5 feet on straight track or 9.5 feet on curved track laterally of the center' of the spur track."

Such finding is supported by substantial evidence and is binding upon the plaintiff.

We agree with plaintiff's contention that fault upon the part of the indemnitor is not always a necessary element of an indemnity action. The parties could have provided indemnity in the present situation by the use of apt language in their contract. We are satisfied

that the language used in the contract is at least ambiguous with respect to the intention of the parties to provide indemnity for any consequences flowing from the 12 foot clearance between the center line of the two tracks. Judge Nordbye has fully considered and adequately answered the question here raised in his memorandum opinion. Plaintiff has failed to demonstrate that the trial court's interpretation of the contract is unsound, irrational or induced by any erroneous view of the law applicable to the interpretation of the indemnity provisions of the contract.

The judgment is affirmed.