CITIZENS STATE BANK OF
BIG LAKE, Plaintiff,

v.

TRANSAMERICA INSURANCE
COMPANY, a Maryland
corporation, Defendant,

and

BIG LAKE GRAIN CO., INC., a Minnesota corporation and Dennis T. Wurm, an individual, Defendants and Third–Party Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Commodity Credit Corporation, The Pillsbury Company, a Delaware corporation and GM McInerney & Associates, Inc., a Minnesota corporation, Third–Party Defendants,

and

TRANSAMERICA INSURANCE COMPANY, a Maryland corporation, Defendant and Third–Party Plaintiff,

v.

Thomas SEGNER and Donna Wurm, Third–Party Defendants.

Civ. No. 3–89–478.

United States District Court,
D. Minnesota,
Third Division.

March 9, 1993.

---

Ann Marie Ladd, Fredrikson & Byron, Minneapolis, MN, for plaintiff.

Kenneth M. Holker, Holker Law Office, Monticello, MN, James F. Roegge, Meagher & Geer, Minneapolis, MN, for defendant.

Lonnie F. Bryan, Asst. U.S. Atty., U.S. Atty. Office, Minneapolis, MN, for U.S. Dept. of Agriculture, Commodity Credit Corp.

David E. Oslund, Robins Kaplan Miller & Ciresi, Minneapolis MN, for The Pillsbury Co.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant and third-party plaintiff Transamerica Insurance Company's motion for summary judgment against third-party defendant Thomas Segner. Based on a review of the file, record and proceedings herein, the court grants the motion for summary judgment.

## BACKGROUND

On September 29, 1987, defendant and third-party plaintiff Transamerica Insurance Company ("Transamerica") issued a federal warehouseman's bond to Big Lake Grain Company, Inc. ("BLG"), a federally licensed grain storage facility. Transamerica issued the bond in a penal amount of $170,000 to secure BLG's faithful performance of its obligations as a warehouseman.

As a condition precedent to issuance of the bond, third-party defendant Thomas Segner, who was then president of BLG, Dennis Wurm and Donna Wurm, who were also officers of BLG, all entered into a general agreement of indemnity with Transamerica on August 13, 1986. Pursuant to that agreement, Segner, Dennis Wurm and Donna Wurm all

agreed to individually indemnify and hold Transamerica harmless:

> From and against every claim, demand, liability, loss, cost, charge, counsel fee (including fees of special counsel whenever by the Company deemed necessary) expense, suit, judgment, and adjudication whatsoever, and any and all liability therefor, sustained or incurred by the Company by reasons of having executed or procured the execution of said bonds or obligations....

General Agreement of Indemnity para. 2.

On March 28, 1990, the Citizens State Bank of Big Lake ("the bank") commenced an action against Transamerica to recover on the bond after the bank's examination of BLG's storage facilities revealed a deficit in the amount of grain stored at the facilities. The bank alleged that it was entitled to payment under the bond because BLG failed to maintain sufficient grain to fully secure its debts and that it failed to deliver the grain to the bank after due demand was made upon tender of the warehouse receipts.[1]

Warehouse receipts were also given to the Commodity Credit Corporation ("CCC"), another creditor of BLG and an agency of the United States Department of Agriculture. When BLG defaulted on its loans, the CCC removed grain from BLG's storage facilities. After that removal, BLG did not have sufficient grain to secure its other debts, and thus the bank sought to recover on the bond issued by Transamerica.

After the bank brought suit, BLG and Dennis Wurm commenced a third-party action against the United States Department of Agriculture and the CCC, alleging that the actions of the USDA and the CCC contributed to the missing grain which was pledged on a warehouse receipt to the bank. The CCC, as a creditor to BLG, also asserted a claim against Transamerica for payment under the bond.

1. The bank had a security interest in all of BLG's inventory, including the grain stored at the facility. The bank's cause of action was premised on warehouse receipts given as security for a loan to BLG. BLG was obligated, as a warehouseman, to deliver its grain to the holder of the warehouse receipts upon tender of those receipts.

The bank also asserted claims against BLG and Dennis Wurm as a result of BLG default on various promissory notes, which were personally guaranteed by Dennis Wurm.

Transamerica subsequently brought a cross-claim against BLG and Dennis Wurm as well as a third-party complaint against Thomas Segner and Donna Wurm on the basis of their alleged obligation to indemnify Transamerica from all claims arising under the warehouseman's bond. The claims asserted by the bank and the CCC exceeded the amount of the bond.

Dennis and Donna Wurm filed Chapter 7 bankruptcy on December 18, 1990. All of their debts were discharged by an order of the bankruptcy court dated December 17, 1991.

All of the parties except Segner subsequently agreed on a settlement in which Transamerica was required to pay the entire amount under the bond, $170,000, in exchange for a release by Citizens Bank and the CCC. Pursuant to the parties' stipulation, on March 27, 1992, the court dismissed all claims except Transamerica's claim for indemnity against Dennis Wurm, Donna Wurm and Thomas Segner.

Transamerica now moves the court for summary judgment against Segner, arguing that under the terms of the general indemnity agreement he is personally obligated to indemnify Transamerica for the full amount paid by Transamerica under the bond and all expenses incurred by Transamerica.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider the motion for summary judgment.

■ Segner contends that the Minnesota Uniform Commercial Code concerning warehouse receipts governs the present dispute, and that pursuant to Minn.Stat. § 336.7–204, the negligence of a warehouseman must be shown before there is any liability under BLG's bond. Segner thus argues that Transamerica's motion for summary judgment must be denied. It is undisputed, however, that the warehouseman's bond obtained on behalf of BLG was issued pursuant the United States Warehouse Act, United States Warehouse Act, 7 U.S.C. §§ 241–73, not under the Minnesota U.C.C. Under the Federal Warehouse Act, questions of liability concerning bonds issued thereunder constitute federal questions on which state decisions are not conclusive. *See, e.g., Farmers Elevator Mutual Ins. Co. v. Jewett,* 394 F.2d 896, 899 (10th Cir.1968). Thus, any questions concerning liability under the bond itself would be governed by federal law rather than the Minnesota Warehouse Act. Moreover, Article 7 of the Minnesota U.C.C.,

on which Segner seeks to rely, specifically provides:

> To the extent that any treaty or statute of the United States, regulatory statute of this state, or tariff, classification or regulation filed or issued pursuant thereto is applicable, the provisions of this article are subject thereto.

Minn.Stat. § 336.7–103. The note to that section specifically states that the provision's purpose is:

> To make clear what would of course be true without the Section, that applicable Federal law is paramount.

*Id.* n. 1. Based on the foregoing, the court concludes that Minnesota U.C.C. law concerning warehouseman's bonds does not apply to any questions concerning the obligations arising under BLG's warehouseman's bond, and that Segner's reliance on any defense pursuant to Minn.Stat. § 336.7–204 is misplaced. The court will look solely to the terms of the general indemnity agreement to resolve the issues raised by Transamerica's motion for summary judgment.

■ Under Minnesota law,

> The rules governing the requisites, validity and construction of contracts generally apply to indemnity contracts.

*Chicago, Milwaukee, St. Paul & Pac. R.R. Co. v. Famous Brands, Inc.,* 324 F.2d 137, 140 (8th Cir.1963); *American Druggists Ins. Co. v. Shoppe,* 448 N.W.2d 103, 104 (Minn.Ct. App.1989) (citing *Chicago, Milwaukee, St. Paul & Pac. R.R.* for that proposition). Minnesota courts are to give indemnity agreements a fair construction to accomplish their stated purposes. *Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 324 F.2d at 140 (citing *Northern Pac. Ry. v. Thornton Bros. Co.,* 206 Minn. 193, 288 N.W. 226 (1939)).

■ Turning to the wording of the indemnity agreement, the court concludes that the language is clear and unambiguous, and states that Segner personally agreed to indemnify and hold Transamerica harmless from any claim, demand, liability, loss, cost, charge, counsel fee, expense, suit, order, judgment or adjudication and from any and all liabilities sustained by Transamerica by reason of its having executed or procured execution of warehouseman's bond. *See, e.g., American Druggists Ins. Co.,* 448 N.W.2d 103 (upholding similar indemnification agreement). Moreover, the indemnification agreement clearly provides that Transamerica had:

> The right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitors' liability therefor to the Company.

General Agreement of Indemnity para. 5.[2] The court thus concludes that under the clear terms of the general agreement of indemnity, Segner personally agreed, on behalf of BLG, to reimburse Transamerica for its expenses and liabilities by reason of executing the bond. The court further concludes that Transamerica was required to pay BLG's creditors under the bond when BLG defaulted on its obligations to the Citizens Bank of Big Lake and the CCC. The court therefore concludes that Segner is personally liable for the amount that Transamerica paid under the bond.

■ Transamerica also seeks its costs and attorney's fees. Attorney's fees are generally not recoverable unless there is specific contract language permitting such recovery. *See, e.g., Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 53 (Minn.1983) (citations omitted). In the present case, the second paragraph of the general agreement of indemnity clearly provides that Segner agreed to indemnify and hold Transamerica harmless from:

> every ... cost, charge, counsel fee (including fees of special counsel whenever by the Company deemed necessary), [and] expense ... whatsoever....

incurred in the execution of BLG's bond. The court thus concludes that the indemnity agreement clearly encompasses attorney's fees and expenses, and that Transamerica is

---

**2.** Transamerica was thereby granted the right to settle any claim covered by the agreement, and the court rejects Segner's claim that the terms of the settlement were somehow suspect because Segner was unaware of either the settlement discussions or agreement between the other parties.

entitled to recover its costs, attorney's fees and disbursements incurred in the present litigation. *See, e.g., United States v. United States Fidelity & Guar. Co.,* 1 F.R.D. 112, 113 (D.Minn.1940) (holding that defendant was entitled to recover costs and attorney's fees based on language of an indemnity agreement).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant and third-party plaintiff Transamerica Insurance Company's motion for summary against Thomas Segner is granted;

2. Thomas Segner shall indemnify Transamerica Insurance Company for the entire sum of $170,000 paid by Transamerica Insurance Company to the Citizens State Bank of Big Lake and the Commodity Credit Corporation pursuant to the general agreement of indemnity; and

3. Transamerica Insurance Company is entitled to reimbursement for all costs, disbursements and reasonable attorney's fees incurred in its defense of the action instituted against it by Citizens State Bank of Big Lake and all fees incurred in commencing its third-party action against Thomas Segner for indemnity.